Same Term.    *C. Gray, Pratt, Gridley, and Allen,* Justices.

## STARING *vs.* BOWEN.

Where a party moves for a new trial, upon a bill of exceptions, he must rely upon the grounds taken and the points made by him, upon the trial, and upon those only.

The certificate of a surrogate, of the proving of a will before him by one of the subscribing witnesses, is not proof of the execution of the will, so as to authorize the will to be given in evidence.

To entitle a will to be read in evidence as an ancient will, without proof, the possession must have been in accordance with the will for thirty years.

Mere efflux of time will not authorize a will of thirty years standing to be given in evidence without proof. There must have been possession under it.

Where there are no circumstances shown to establish the genuineness of a will, and the evidence is that the premises have been occupied by some one from the death of the testator ; but the plaintiff is unable to show that such possession was in pursuance of the provisions of the will, for the period of thirty years ; and there is better evidence of the execution of the will, within reach of the plaintiff, viz. one of the subscribing witnesses residing within the state, such will can not be received in evidence as an ancient deed, without proof.

Where possession is relied upon, instead of the ordinary and usual proof of the execution of a will, it is not sufficient to exclude it that one of the witnesses to the will is still living.

But the possession which will excuse the production of the subscribing witnesses to a will, must be for the full term of thirty years, since the death of the testator, if not to the time of the commencement of the action.

Although a will of more than thirty years standing may, in the discretion of the judge, be permitted to be read as an ancient will, before proof of an accompanying possession, still it is a question as to the order of proof, in the discretion of the court, whether the possession shall be first proved or the will first given in evidence, in order that the court may be able to say whether the possession has been in accordance with the provisions of the will.

THIS was an action of ejectment, tried at the Oneida circuit on the 26th day of September, 1845, before his Honor PHILO GRIDLEY, Circuit Judge. The declaration contained two counts, in each of which the plaintiff claimed in fee an equal undivided fourth part of the easterly part of lot No. 60, in Gage's Patent, situate in the town of Deerfield, in the county of Oneida, and containing one hundred acres, &c. The plea was the general issue, and upon the trial the defendant's counsel admitted

that the defendant was in possession of the premises described in the declaration at the time the declaration was served on him in this cause.   John A. Staring, a witness on the part of the plaintiff, testified that he was a brother of the plaintiff; that his father, Adam Staring, died in June, 1812, at Openheim, in the county of Montgomery, where he owned real estate; that in 1811 Adam Staring bought of one Vedder the farm now occupied by the defendant, and took possession thereof in the spring of 1812, and planted a portion of the land; that Vedder, by some arrangement with Adam Staring, continued to occupy a part of the farm until the ensuing winter; that at his death Adam Staring left Nelly Staring his widow, and four sons, viz. Frederick A., Philip A., John, and the plaintiff, Henry A. Staring, and four daughters, Betsey, Nelly, Peggy and Caty; that Peggy died several years before, intestate and without issue, and Nelly died in 1840; that Philip died several years ago, leaving children who are now living; that after the death of Adam Staring, the witness and his brothers harvested the crops and cut the grass on the lot, except such portions as belonged to Vedder; that soon after their father died Frederick and Philip A. Staring went on to said lot, and one or both of them continued to occupy it until within eight or ten years since, when the defendant took possession.   The plaintiff's counsel then offered in evidence a paper writing which he alleged was the original will of the said Adam Staring, bearing date June 4th, 1812, which purported to have been duly executed in the presence of three witnesses, who subscribed it as such, and under which the plaintiff claimed title to an undivided fourth of the lot in question, as devisee.   The following endorsement and certificate were upon said will: " Registered in the surrogate's office of the county of Montgomery, in register of probate No. 2, page 389, &c. the 16th day of June, 1814.   James Lansing, surrogate."   " Be it remembered that on the 16th day of June, in the year of our Lord one thousand eight hundred and fourteen, personally appeared before me James Lansing, surrogate of the county of Montgomery, Luther Pardee, who being duly sworn deposeth that he saw Adam Staring sign and seal the foregoing

testament, by making his mark thereto and acknowledging the seal, and heard him publish and declare the same as and for his last will and testament; That the said Adam Staring was at the time thereof of sound, disposing mind, memory and understanding. That this deponent subscribed his name thereto as a witness to the execution thereof, in the presence of the said Adam Staring, the testator, and that he at the same time saw John Staring and Reuben Ford, respectively, subscribe their names thereto as witnesses to the execution thereof, also in the presence of the said testator, James Lansing." The reception of said will as evidence was objected to by the defendant's counsel, on the ground that before the revised statutes there was no law authorizing a will that had been proved before a surrogate, and duly certified by him, to be given in evidence on a trial at law. The circuit judge decided that said will could not be received as evidence, under such proof, and that it must be proved by a subscribing witness, if living, &c. in order to be evidence. To which decision the plaintiff's counsel then and there excepted, and then showed that one of the other witnesses, John Staring, was dead, and that Reuben Ford, the other, resided in Canada, and insisted that the will had been proved by the only witness who could be called to prove it; and he had testified to all the necessary facts, as appeared by the surrogate's certificate. It was admitted, by the plaintiff's counsel, that Luther Pardee, whose name as a witness was subscribed to said will, was now living and resided at Oswego, in the county of Oswego. But his honor held the proof insufficient, and rejected the will, to which decision the plaintiff's counsel excepted. The plaintiff's counsel then offered said will in evidence, (without proof of its execution,) as an ancient will or deed, and proposed to show that all who had occupied said lot, since the death of Adam Staring, and down to the death of Nelly, his widow, had done so in subservience to the provisions of said will, and had acknowledged and recognized it as the common source of their title. And as evidence of such proposed facts in connection with said will and the evidence already given, the plaintiff's counsel proved the due execution of two instruments under seal,

and offered them as evidence, to wit. an agreement between Frederick A. Staring, Philip A. Staring and John Staring, dated May 18th, 1817. Also an agreement under seal between Nelly Staring, Frederick A. Staring and Philip A. Staring, dated June 24th, 1817. The defendant's counsel objected to the will being given in evidence as an ancient will, without proving its due execution, and also to the agreement and other evidence so offered being sufficient to authorize it to be so read as to enable the plaintiff to recover. His honor, the circuit judge, thereupon decided the evidence offered was inadmissible, and rejected the said will and agreement so offered as evidence, on the ground that there appeared to be a living witness to the will, within the jurisdiction of the court, and that from the death of Nelly Staring, the widow, in 1840, back to the death of the testator, was less than forty years, and there was no evidence, (though an attempt had been allowed and made to prove the fact,) of the defendant's occupation or claim under the will, though it was admitted he had been in possession several years. To which decisions and rejections the plaintiff's counsel excepted. And no further evidence being offered the circuit judge directed the clerk to enter a nonsuit, which was done accordingly. And to this direction the plaintiff's counsel also excepted ; and upon a bill of exceptions the plaintiff now moved for a new trial.

*D. P. Corey*, for the plaintiff.

*L. Ford*, for the defendant.

*By the Court*, ALLEN, J. The plaintiff moves for a new trial upon a bill of exceptions, and must rely upon the grounds taken and the points made by him upon tha trial. He there claimed expressly as devisee under a will of his father, and put forth no other ground of claim whatever. He can not, therefore, be permitted, upon this occasion, to insist that he was wrongfully nonsuited, for the reason that the evidence showed a seisin in his ancestor, and that he was entitled to recover as heir, if no will was proved. In his declaration he claimed one

undivided fourth part of the premises; which would have been his interest if he had succeeded in establishing his claim under the will; whereas, in the capacity of heir, his interest would have been one-eighth. And in the bill of exceptions made by himself, he has stated that he claimed title under the will. He must be confined to that claim. (*Cowen & Hill's Notes*, 791, *and cases cited.*) There appears to have been no question made upon the trial as to the title of the plaintiff's ancestor; and the only question was whether the will was sufficiently proved to admit it to be read in evidence:

It was first offered in evidence as proved before the surrogate of the county of Montgomery, on the 16th of June, 1814, by the oath of Luther Pardee, one of the subscribing witnesses, no account being given of the other witnesses; the proof being evidenced by the certificate of the surrogate. And an exception was taken to the decision of the circuit judge excluding the will as evidence under that proof. This exception is not now relied upon. The proof came far short of any statutory requirement upon that subject; and the certificate of the surrogate was not evidence, either by statute or the common law. (*Jackson* v. *Laraway*, 3 *John. Cases*, 283. 1 *R. L.* 365, § 6. 1 *K. & R.* 178, § 6.)

It was proved, upon the trial, that one of the subscribing witnesses was living within the jurisdiction of the court, and the plaintiff then proposed to read the will in evidence as an ancient will, without proof of its execution; and in connection with such proposition gave in evidence two agreements relating to the occupation of the premises; the one between the widow of the testator, who had, under the will, a life estate therein, and who died in 1840, and Frederick A., and Philip A. Staring, two of the sons of the testator, and another agreement between Frederick A., and Philip A., and John Staring, by which the latter agreed to convey to the former his interest in the premises. The plaintiff attempted, but unsuccessfully, to show that the defendant had occupied in continuation of the same title and under the will. The defendant had been in possession, at the time of the trial, for some eight or ten years, and the testator died in 1812.

The circuit judge rejected the will and agreements "on the ground that there appeared to be a living witness to the will within the jurisdiction of the court, and that from the death of Nelly, the widow, in 1840, back to the death of the testator, was less than forty years ; and there was no evidence, (though an attempt had been allowed and made,) to prove the fact of the defendant's occupation or claim under the will, though it was admitted he had been in possession several years."

A point is now made that the agreements before referred to were improperly rejected, for the reason that they tended to characterize the possession of the premises, for a part of the time, after the death of the testator, and show it in harmony with the provisions of the will. I do not understand that the agreements were rejected as evidence, but that the circuit judge merely held that they were not alone sufficient to authorize the reading of the will in evidence. That they only showed possession under the will from 1817 to 1840, less than thirty years; and terminating several years before the trial. Such was clearly the effect and extent of the decision. In this view the decision was clearly correct.

There is doubtless a clerical error in making up the bill of exceptions, in relation to the number of years which the possession must have followed the will to entitle it to be read in evidence as an ancient will, without proof. Thirty years is the time as now settled; but whether thirty, or forty, as stated in the bill of exceptions, is immaterial in this case, as the plaintiff failed to show possession in accordance with the will for either period. Mere efflux of time will not authorize a will of thirty years standing to be given in evidence without proof. There must have been possession under it. (1 *Phil. Ev.* 504. *Jackson* v. *Luquere*, 5 *Cowen's Rep.* 221. *Rancliff* v. *Parker*, 6 *Dow* 202, *per Ld. Eldon.*)

There are cases, it is true, in which other circumstances tending to show the genuineness of the instrument have been allowed to supply the want of proof of a continued occupation under the will for thirty years, where the premises have been a part of the time wild and uncultivated, and the party has given

the best evidence of the execution of the will of which the case was susceptible. (*Jackson* v. *Luquere*, 5 *Cowen*, 221. *Jackson* v. *Laraway*, 3 *John. Cases*, 283.)

In this case, however, there were no circumstances shown to establish the genuineness of the will, and the evidence was that the premises had been occupied by some one from the death of the testator; and the plaintiff was unable, although permitted to make the effort, to show such possession in pursuance of the provisions of the will, for a period of thirty years. And there was better evidence of the execution of the will within reach of the plaintiff, namely, one of the subscribing witnesses thereto, residing within the state. Where possession is relied upon instead of the ordinary and usual proof of the execution of a will, it is not sufficient to exclude it that one of the witnesses to the will is still living. (*Doe* v. *Wolley*, 8 *Barn. & Cress.* 22. *S. C.* 3 *C. & P.* 402, *and* 2 *Man. & Ryl.* 195.) But the possession which will excuse the production of witnesses to the will, must be for the full term of thirty years, if not to the time of the commencement of the action; and the thirty years with us commences at the death of the testator, and not, as in England, from the date of the will. (*Doe* v. *Wolley, supra; per Kent, in Jackson* v. *Laraway, and cases cited by him. Fetherly* v. *Waggoner*, 11 *Wend.* 599. *Jackson* v. *Christman*, 4 *Id.* 277. *Jackson* v. *Van Dusen*, 5 *John. R.* 144. *Jackson* v. *Blanshan*, 3 *Id.* 292.) Although a will of more than thirty years standing may, in the discretion of the judge, be permitted to be read as an ancient will, before proof of an accompanying possession, still it is a question as to the order of proof, in the discretion of the court, whether the possession shall be first proved, or the will first given in evidence, in order that the court may be able to say whether the possession has been in accordance with the provisions of the will. (*Doe* v. *Passingham*, 2 *C. & P.* 440. *Cowen & Hill's Notes*, 718.) In this case the proof was all before the court at the time of making the decision, and the will was properly excluded. A new trial is denied.