## PETER W. ENDERS et al., v. ADAM STERNBERGH et. al.

A deed appearing to be of the age of thirty years, may be given in evidence without proof of execution, if such an account of it be given as may, under the circumstances, be reasonably expected; and such as affords the presumption that it is genuine.

Secondary evidence may be given of a document which has been accidentally lost and destroyed without the fault of the party offering it, although such document is one, which, from age or other circumstances, proves itself, instead of being authenticated by ordinary proof of its execution.

Where evidence has been offered, and has been rejected by the court, it is to be presumed the proposed evidence would have been given had the court permitted it to have been.

THIS is an appeal by the defendants from a judgment in favor of the plaintiffs, rendered in an action of ejectment, tried before Justice DEODATUS WRIGHT and a jury at the Schoharie circuit, in June, 1857. The recovery was for sixty acres of land in Morris and Coeyman's patent, lying in the town and county of Schoharie. The plaintiffs are children of Catharine and Elizabeth Enders, who were grandchildren of Lambert Sternbergh (1st), who died in 1765, and children of his son, Adam, who died in 1764. The latter left three children, Lambert (2d) and said Elizabeth and Catharine, and left also a will, claimed to cover the premises in question, in which he devised an estate for life to his son, Lambert (2d), with remainder over to his daughters, Elizabeth and Catharine. Under this will the plaintiffs claim title to the premises in question. Lambert (2d) died in 1829, leaving a son, Adam, who has two sons, John and Lambert, and the three latter are the defendants in the suit.

They claim title to the premises under their father and grandfather, Lambert (2d), under an alleged will of Lambert (1st), sometimes called the patentee, devising the premises in question, as is alleged, to his said grandson, Lambert (2d). The latter also claimed title by deed from one Adam (sometimes called "crazy Adam") Sternbergh, of the 17th May, 1785, the latter being the eldest son

of Jacob Sternbergh, who was himself the eldest son of Lambert (1st). The defendants claimed that if their title failed under the will of Lambert the patentee, they could still trace a successful title to themselves under the deed of crazy Adam, who, it was claimed, in default of a will, was entitled to the premises by descent, under the laws of primogeniture. The plaintiffs claimed that there was no sufficient evidence of any seizin in the premises in Lambert (1st) at all, or that his son Adam, the testator, under whom they claimed, ever derived his title from his father, Lambert the patentee. Lambert (1st) had other sons, Abram, the father of Elizabeth Enders, one of the witnesses in the case, and Nicholas and David, executors of his alleged will; the latter, David, also having children, Henry, Philip and Peter, one of whom (Philip) had a daughter, Christina, wife of Caleb Carpenter, the latter being also a witness in the case, and who, at the instigation of his wife or her uncle, burnt up (in 1844 or 1846) the old will of Lambert (1st), under an apprehension that it would, if discovered, endanger their title to a portion of the real estate of Lambert the elder of which they were in possession.

One of the leading questions in the case arose upon the exclusion by the judge, at the trial, of copies of this will; one of which had been made by Carpenter some ten or twelve years before the time he burned it; he having received from his wife, and had in his possession the original some seven or eight years, from about the period of his marriage. Another in the handwriting of General Gebhard (who was dead), purporting to have been copied 27th December, 1829. A third in the handwriting of Hermanus Bouck, who died in 1831 or 1832. A portion of this will, alleged to embrace the premises in question, was also copied into the aforesaid deed of crazy Adam to Lambert Sternbergh (2d), which also referred to, and corresponded with the date of, the will in question. A motion for nonsuit was made in the case, upon the ground that the suit having been commenced the 28th November, 1853, more than twenty years had elapsed since the death of Lambert (2d), which took place in 1829, and,

34

therefore, the plaintiffs' right was barred by the statute of limitatations.

The plaintiffs offered several depositions in evidence taken on commission, the reading of which was objected to on the ground that it did not appear thereby that the orders for the commissions had been filed in the office of the county clerk, or of the clerk of this court. The objections were overruled, and the defendants excepted. Certified copies of these papers are now produced showing that they were duly filed. Exceptions were taken to the charge of the judge, and to his refusal to charge in several particulars which, so far as they are material, will be hereafter noticed.

Much evidence was given on the part of the plaintiffs of the parol declarations of Lambert (2d), during the time he was in the possession of the premises, tending to show that he had but a life estate in the premises in question, most of which was objected to by the defendants as incompetent, and exceptions were taken to its admission.

Similar declarations of the defendants themselves were also introduced in evidence. It was met by counter testimony on the part of the defendants of Lambert's declarations, tending to show that he claimed an absolute title in fee. The other material facts of the case sufficiently appear in the following opinion. The Supreme Court, at General Term, denied a new trial, and judgment having been entered for the plaintiffs, the defendants appealed therefrom to this court.

*A. J. Parker,* for the defendants (appellants).

*L. Tremain,* for the plaintiffs (respondents).

HOGEBOOM, J. The nonsuit was properly refused irrespective of the question whether the limitation applicable to the case was 20 or 25 years. To make the limitation applicable at all on such a motion, there must have been evidence of adverse possession, and that evidence must have been substantially uncontroverted or so greatly preponderant as to overthrow a verdict rendered in opposition to it. To justify

the defense of adverse possession, the possession must appear to have not only been adverse, but continually and uninterruptedly so. (*Colvin* v. *Burnett*, 17 Wend., 55; *Brant* v. *Ogden*, 1 Johns., 156.) There was much evidence to show by the declarations of Lambert, that it was not of that character, but was consistent with the plaintiffs' title. This evidence was proper at least to characterize the possession, if not to control the title.

There was also evidence of the defendants' own admission of a similar character. It was, therefore, a proper matter for the jury to determine, and furnishes an effectual answer to the motion for a nonsuit. (*Pitts* v. *Wilder*, 1 Comst., 525; *Hunter* v. *Trustees of Sandy Hill*, 6 Hill, 507.)

I think, however, one or more copies of the will of Lambert the patentee was erroneously rejected. By that will 300 acres of land (which there was evidence to show covered the premises in question) were given to his grandson Lambert Sternbergh under whom the defendants claim.

This will if it had been produced, would have been admissible without proof, as an ancient paper. It was regular upon its face; that is, apparently executed with legal formality. It bore date on the 7th of January, 1765; the testator died in the same year; it was "an old, ancient paper from its looks; it was rolled up; the paper was coarse; looked as if it had been folded; it was worn; ink and all looked old; coarse handwriting." It was found among the descendants of the testator, in the possession of a family whose ancestor was an executor named in the will; referred to names and places consistent with the other testimony in the case; was handed down in the family, according to the family tradition, from the executor himself, he being also a devisee in the will; and there was evidence to show claim of title and actual possession, corresponding with the provisions of the will.

If this last particular, possession in accordance with the will, is sustained by the evidence, as I think it clearly is, for the possession of the defendants themselves, in addition to that of other parties, may be said to be of that character, then

according to all the authorities it would have been admissible without proof of execution. (*Jackson* v. *Laraway*, 3 Johns. Cases, 283; *Jackson* v. *Chrismen*, 4 Wend., 277.)

But it never was absolutely indispensable that possession, in strict accordance with the terms of the instrument, should be shown to entitle the paper to admission as an ancient paper. If it were so, many a title would be destroyed. Nor is it possible to trace possession back beyond the knowledge of living men, except by tradition or hearsay, or by the intrinsic probabilities of the case, and the consistency of existing facts with such prior possession. Mere efflux of time will not make it admissible without proof. But aside from this, any circumstances which go to confirm the genuineness or authenticity of the document, make it admissible in evidence. It "must be corroborated by possession or *other circumstances.*" (*Jackson* v. *Luguere*, 5 Cow., 221; *Jackson* v. *Laraway*, 3 Johns. Cases, 283; *Starkie* v. *Bowen*, 6 Barb., 114, 115.)

A deed appearing to be of the age of thirty years may be given in evidence without proof of execution or possession, if such account of it be given as may, under the circumstanes, be reasonably expected, and will afford the presumption that it is genuine. (3 Johns. Cases, 283; *Kewlett* v. *Cook*, 7 Wend., 371, disapproving dictum of KENT, J. in *Jackson* v. *Blaashan*, 1 Johns., 298; see also *Bogardus* v. *Trinity Church*, 4 Sandf. Ch., 623; Greenl. Ev., § 114, note 3.)

It is said that there was no evidence that the will, or any of the copies, were thirty years old. This is an entire mistake. The paper itself, if an original (and to some extent also if a copy), bearing upon its face the marks of age and authenticity, contains intrinsic evidence of the time of its execution, more or less strong, according to circumstances.

The date of the paper, if resembling the residue of its contents, and not appearing to be altered or interpolated, or otherwise spurious, is of itself a circumstance of some strength to show the period of its execution, inasmuch as a suspicion of its genuineness is not to be unreasonably indulged. But in this case there was positive evidence of its

antiquity. A deed of Adam Sternbergh, introduced in evidence, and not disputed to have been executed in 1785, and recorded as early as 1786, contains an extract from this will and refers to it by its date, showing, of course, its existence at a prior period. One of the copies is proved to have been in the handwriting of Harmanus Bouck, a lawyer, who died in 1831 or 1832, twenty-five or twenty-six years before the trial, and was out of practice some years before his death; another copy, made from the last by General Gebhard, purports to have been made on the 27th of December, 1829. Still another copy, an exact copy, and the most important of all, was made by Caleb Carpenter from the original, between the time it went into his possession, nineteen years before the trial, and seven or eight years afterward, while it was in his possession. This witness (and his wife corroborates him) describes the original will itself, and gives such particulars of its appearance and apparent genuineness as, I think, clearly entitles it to be used in evidence if its contents could be shown. I know of no rule of law which absolutely requires the evidences of genuineness and authenticity to be determined by *inspection* before a court and jury, instead of *competent proof* from persons who had seen it—its non-production being sufficiently accounted for.

If then the paper itself, if produced, would be admissible, is not evidence of its contents admissible in case it be lost or destroyed? I am not aware of any exception to the rule except this, that if the paper be purposely destroyed by a party having an interest in its contents, he shall not be permitted to substitute secondary evidence, because the willful destruction of the more reliable witness tends to throw suspicion upon the verity and authenticity of the inferior evidence. (*Riggs* v. *Taylor*, 9 Wheat., 483; *Blade* v. *Noland*, 12 Wend., 473; 2 Cow. & Hill's Notes, 1206.)

Further than this, I am not aware that the rule has ever been carried. Innocent parties should not suffer from the indiscretion or wickedness of others with whom they have no connection, and of whose acts they have no knowledge. I do not discover anything tending to cast suspicion on the defend-

ants as having been in any way connected with, or cognizant of the destruction of this paper. The established rule, therefore, applies that the next best evidence is to be admitted. (*Fetherly* v. *Waggoner*, 11 Wend., 599.)

The secondary evidence, if in its nature admissible, was of the most satisfactory character. It was in writing, and sworn to be an exact copy. A second copy, differing, however, in the name of one of the subscribing witnesses, was also produced; but whether copied from the original, does not appear. A third copy, which, though copied from the last preceding copy, was in all respects like the first copy, was also produced.

These were all alike, except in the single particular above mentioned, and coincide also in point of date and contents with the extract from the will contained in the deed of crazy Adam, of 1785.

The first being proved to have been taken from the original, was entitled to very high consideration as evidence, and, as it seems to me, was clearly admissible. I think it is no sufficient answer to this to say this is dangerous evidence. Like all secondary evidence, it is not equally satisfactory or safe with that of the original paper; but it would invade a perfectly well-settled rule of law, and in many cases operate most oppressively, to withdraw it entirely from the consideration of the jury.

Nor do I think we are authorized to say that the exclusion of this evidence was not injurious to the defendants. How can we know this? and what is the legitimate inference, when the foundation stone of one of two distinct defenses is thus abruptly removed? To say that the defendants have another equally strong defense if either were available, is to make an assumption which the jury, it is quite possible, were not prepared to sanction. The other defense was founded upon the deed of crazy Adam. It may be that they concluded that a deed from crazy Adam did not confer a title altogether sound, especially as one of the witnesses testified that one of the defendants informed him that crazy Adam was not considered competent to transact business. Further,

the will and the deed support and corroborate each other in regard to the defense founded on the deed. There being evidence to show there *was a will*, it was proper, if not necessary, that that will should be produced, and being produced and claimed to confer only an estate for life, the two together concur to give character and strength to the title set up under them on the part of the defendant. Besides, this case comes up on exceptions, and it is nearly a universal rule that material evidence erroneously admitted, or excluded upon exception, requires a new trial, and that we are not permitted to speculate upon the probable effect of the error upon the final result. (*Dresser* v. *Ainsworth*, 9 Barb., 619; *Worrall* v. *Parmalee*, 1 Comst., 519.)

It does not belong to the judge at the trial to reject one of two good defenses which the party may offer, especially when he does not put his decision on any such ground, nor indicate to the jury his opinion on the other branch of the case. The party has a right to take his chances before the jury on both, and it is dangerous for a court of review to indulge in conjectures as to the probable non-prejudice to a party of the exclusion of an instrument of evidence vital to one branch of his defence. There would be more plausibility in this aspect of the case if we could see that the judge at the trial had distinctly charged that the defendants, if entitled to succeed at all, were entitled to a verdict of the jury under the deed from crazy Adam.

Again, the will appears to have been an important item of evidence to rebut the presumption of a deed relied on by the judge in his charge, from Lambert to Adam. This was material evidence on that point.

I think further, that if the exclusion of the will at the trial was upon the ground (as it manifestly was not) that the defendant had another substantial ground of defense, such ground should have been (as it was not) stated by counsel and sustained by the judge as a legitimate objection to the testimony. The parties then could have distinctly taken their exceptions to such a ruling and distinctly prepared themselves for other grounds of defense.

Again it is said that the rejection of this evidence was of no moment for the further reason that the will, omitting words of inheritance, gave only a life estate to Lambert (2d), waiving the question whether the will conferred a fee or a life estate only on Lambert (2d), (which is not without embarrassment, for the will purports to dispose of all the testator's *temporal estate,* and there is no residuary clause giving the remainder of this estate to any other person). I think it cannot be said this evidence was unimportant, for the following reasons:

1. If it showed a *life estate* in Lambert (2d), it was proper to show that fact as *introductory* to and in *connection* with other evidence on which a complete defense was to rest. Thus it was competent to show it in connection with the deed from crazy Adam; which evidence it corroborated and supported.

2. It tended to show *title out of Adam,* the son of the testator on whom (Adam) the plaintiffs relied as the source of their own title. Adam died before his father, Lambert, and if Lambert was seized and died in possession of the premises, of which there was much, not to say conclusive evidence, proof of Lambert's will, carrying away the estate from Adam, and, of course, from his devisees, would be a very material link in the chain of defendants' evidence, and whether it showed an estate in fee in Lambert (2d), was not so material as that it showed title out of the plaintiffs.

If Lambert (1st) died in possession owning the premises, then the only way in which the plaintiffs could claim would be as his heirs-at-law. But defendant Adam (as well as numerous other persons) was also (in such case), his heir-at-law, and the parties would be tenants in common, and the plaintiffs would not be entitled to recover at all without showing an ouster by their co-tenants, which would not be presumed, and if they did recover would be entitled to only a fractional proportion of the premises, instead of the entire tract which they in fact recovered at the trial. Moreover, I think so narrow, and far from obvious ground for the exclusion of apparently proper evidence, should have been

mentioned at the trial, to the end that the party ruled against might have had an opportunity to obviate the objection by other evidence. Again it is now urged, but without ever having been suggested on the trial, that this will neither devises nor assumes to devise the premises in question.

I should be strongly inclined to adopt the contrary view, that it was assumed at the trial, and therefore must be taken for granted here, that it did dispose of the premises in question. I am aware that there is proof in the case tending to show that one of the defendants admitted that the crazy Adam deed (which related to the same premises as did the will) "was of no use against the Enders' *because it related to the woodland*" (a different tract); but there is, on the other hand, much evidence tending to show that it *did* relate to the premises in controversy, and it was, therefore, a question to be submitted to the jury. The witnesses (several of them) show that the premises in controversy are lot No. 110 in Morris and Coeyman's patent (the woodland lying in the Sternbergh patent), and several others testify that the mother of Lambert, 2d (the devisee), lived on the farm in question, which satisfies the words of the devise, which are: "I give unto my grandson, Lambert Sternbergh, three hundred acres of land, *which his mother now has in possession,* or two lots." There can be no question that there was enough, at all events, in favor of the defendants' location of this tract to draw the question to the jury. In any aspect in which I am able to consider it, I am of opnion that one or more copies of the will were erroneously rejected.

I am not satisfied with that part of the charge which authorized the jury, in case Lambert, the father of the testator, Adam, was originally the owner of the premises in question, to presume a conveyance from Lambert to Adam if they were satisfied from the evidence such conveyance had been made. There would seem to be a saving clause to the otherwise positive direction or authority of the court in the phraseology at the end of this sentence, but when we come to consider, as the case states, that "all the evidence upon which said charge was founded is set forth in the bill

of exceptions," and on examining that evidence find no proof of any such conveyance, nor tending to prove that one had been made, I think the remarks of the judge are exceptionable and well calculated to mislead the jury. The judge had already told the jury, in effect, that the death of Adam in possession implied title in him at his death, because he had said that the will of Adam, if he died in possession, *prima facie*, gave title to the plaintiffs, which I think was as far as he was authorized to go. To encourage the jury to go further and presume, in the absence of evidence and against evidence, a conveyance from the father to the son, when it was a disputed question before them whether the father or the son was in possession, and there was much evidence tending to show that the father was at the time of his death, one year after the son's death, and the father had made a will (or there was evidence tending to show that he had) disposing of the property in question, was but stimulating them to indulge in the loosest presumptions; in the first place to presume title in fee in Adam from the fact of possession at his death, and, if he was not in possession, to presume a conveyance from his father to Adam in order that Adam's will might take effect. The rule on the subject is carefully and, I think, well stated by Chief Justice TINDAL in *Doe* v. *Cooke* (6 Bing., 174 – 179): "No case can be put in which any presumption has been made, except when a title has been shown by the party who calls for the presumption, good in substance, but wanting some essential matter necessary to make it complete in point of form. In such case, when the possession is shown to have been consistent with the fact directed to be presumed, and in such cases only, has it ever been allowed."

There are subordinate questions in the case which I do not deem it necessary to examine, and if I am right in the conclusions thus far arrived at, they are wholly unimportant to be considered.

I think the judgment of the Supreme Court was erroneous, and should be reversed ; and that a new trial should be granted, with costs to abide the event.

Denio, Ch. J. I am of opinion that upon the evidence which was given respecting the will, of which a copy was offerred in evidence, and upon the proof which was proposed to be given and was rejected, the copy should have been received. I do not perceive why, upon principal, secondary evidence may not be given of a document which has been accidentally lost or destroyed, without the fault of the party offering it, although such document was one which, from age or other circumstances, proved itself, instead of being authenticated by ordinary proof of its execution. The law regards an ancient deed or will which has been kept in the proper custody, and where the possession and enjoyment of the property devised or conveyed, has corresponded with the dispositions of the instrument as *prima facie* an authentic document. So far as its consistency as a piece of evidence is concerned, it stands on the same footing as an instrument duly proved or acknowleged. If a paper, the execution of which can be proved, is lost or destroyed, a party interested under it may, from the necessity of the case, prove what it contained and avail himself of it as though it had been produced. But if, instead of being capable of proof, by bringing witnesses to its execution, it be shown to be a paper which, under the circumstances appearing in evidence, proved itself, and did not require the production of witnesses to its execution, the reason for admitting secondary evidence of its contents would appear to be equally strong as in the other case. So far as the evidence of antiquity arising from the appearance of the paper is material, the party would have to supply it by oral testimony from one who had seen it. No doubt it would be more satisfactory to have the paper to produce before the court and jury, but where this cannot be done, the same principal of necessity which admits secondary evidence of its contents would allow proof of its general appearance, and of the marks of antiquity which were apparent upon it. To show the reasonableness of this position, suppose an ancient deed or will to have existed down to a very late period antecedent to the trial, and to be accompanied with all the circumstances required to admit its reception

without proof of its execution, and then that it was accidentally burned up. No one, I think, would claim that the party interested under it, would forfeit his rights by being precluded from giving secondary evidence of its contents. The evidence to bring this will within the rule was in my opinion sufficient. It purported to have been duly executed and attested; it was found in the hands of a descendant of the testator, who was also a descendant of one of the executors; it was therefore found in proper custody. The paper was about eighty years old when it was destroyed, and it had all the appearance of age which a paper which had existed so long would be expected to have. The premises in controversy had been held in consistency with its dispositions. Lambert Sternbergh, the grandson of the testator, to whom it was devised, entered into possession of it as soon as he came of age, previous to which his mother, who was his natural guardian, and her husband, had been in possession. This is precisely what would have happened if the will were a genuine paper. The alleged will also devised land to all the testator's children, and among them to his son Abraham, and a daughter of this Abraham was examined by the defendants who offered to prove by her that her father acquired real estate under the will of his father, the testator, in the alleged will; but this was rejected. In testing the question we must consider that the offered evidence would have been given had it been allowed. In addition to this, a very explicit act recognizing the will as an authentic one was shown by the production of the deed from Adam Sternbergh, to Lambert the grandson of the testator. This deed was executed seventy-two years before the trial and only about twenty years after the date of the alleged will, when the disposition which the testator had made of his property must have been known and remembered among his numerous family. Both parties to it were the descendants of the testator, and the grantee a devisee under the alleged will, the grantor being his grandson and his heir-at-law, and the grantee also a grandson and the devisee of the premises in controversy. The deed refers to the will accurately by

its date, and it moreover recites one of the disposing clauses in *haec verba*. This proof taken together appears to me to have been quite sufficient to warrant the reception of the will in evidence as an ancient will within all the cases. The evidence of its destruction and of the accuracy of the copy offered in evidence was entirely satisfactory. It follows that the ruling by which it was excluded when offered was erroneous.

It is a much more difficult question whether, considering the course which the trial subsequently took, the error was at all material. The deed from Adam Sternbergh, the grandson of the testator and his heir-at-law, to another grandson, Lambert Sternbergh, under which the defendants claim title, to which I have just referred for another purpose, was sufficient to carry to the grantee the title to the premises, on the assumption that Lambert (the elder) died intestate as to his property, either wholly or in respect to the reversion expectant on the death of Lambert, the grandson. Hence, it is urged, with some reason, that if Lambert Sternbergh (the elder) died seized of the premises, the defendants made out a title to them under the deed of his heir-at-law, and thus the existence of the will became of no direct importance. If there had been any question of fact to submit to the jury respecting the deed, it could have been answered that the defendant should have been permitted to show both branches of his title; but upon the facts proved there was no such question. There was no answer to the defendants' title under the deed, provided the elder Lambert Sternbergh died seized, and if he did not, the will could have no operation.

The plaintiffs claim under the will of Adam Sternbergh, one of the sons of Lambert (the elder), executed in 1763. He, Adam, died the next year, and his father survived him, and died in 1765; having made his will, according to my view of the evidence, in January of that year. The will of Adam, in its general terms, embraced the premises, provided the testator was entitled to devise them; and under that will the ancestresses of the plaintiffs took a vested remainder sub-

ject to the life estate devised to Lambert, his son. The real question in the case, therefore, was, whether Adam was seized of the premises at the date of the will and at his death. If he was, the plaintiffs' title was complete, but otherwise they they had no pretense of title. No paper title in him was attempted to be shown. But possession of a person with a claim of ownership is *prima facie* evidence of title, and possession alone, without anything to qualify it, would be presumptive evidence of title. After such a length of time no living witness can speak as to the fact of possession of his own knowledge, and I think there is no rule admitting hearsay upon such a question.

The premises in question appear to be embraced in two deeds, executed respectively by Philip Schuyler and others, and by Cornelia Schuyler and others to Lambert Sternbergh the elder, in 1754; eleven years before the death of the grantee. The title is not traced further back, nor is there any direct evidence that the grantee entered under the conveyances. If the copy of this will had been admitted, an authentic assertion of ownership on his part would have been shown, within about ten years from the execution of the deeds to him. The lands in question, among others, were specifically devised by that will to his grandson Lambert. It is unimportant to consider whether the want of technical words of inheritance would have limited the devise to an estate for life, because if the elder Lambert was the owner at the time of his death, the plaintiffs would have taken nothing upon his intestacy of the reversion. There is no competent evidence that Adam, the son of Lambert (1st), ever had possession of the premises. It is, however, probable; for his will, after his death, and at the time of the death of the wife of his father, was in possession, as appears by the will itself. But this same evidence, which shows her to have been in possession at that early period, also shows, argumentatively, that the possession was in subordination to the title of her husband's father; but in the same instrument he disposes of it to her son, the second Lambert; which he would have no right to do if her husband had died seized.

There was much evidence of the declarations of Lambert (2d), as to his title to the premises. He undoubtedly often admitted in substance that he held under the will of his father, which gave him only an estate for life, with remainder to his sisters, under which the plaintiffs claim; but he also sometimes claimed that his father did not own the land, and that *he* held it under the will of his grandfather. The declarations of Adam, the defendant, and his desire, and that of his sons, the other defendants, to conceal the will of the elder Adam, were entitled to little weight, as neither he or they could have known anything respecting the source of title of Lambert (2d). The will of the elder Adam is not in any respect hostile to that of his father, the first Lambert. It does not devise the premises in question specifically, although it embraces them if he owned them. If he did not own these premises, it took effect only upon his other lands; and it is clear that he was seized of other real estate, probably in large quantities, as he was or had been joint patentee with his father of three thousand acres in the Sternbergh patent. The will of the first Lambert is an assertion of dominion over the particular premises in question, and the will of his son Adam is not hostile to that assertion, as the devise is general, and, in effect, rebinding, and does not assert a right to dispose of these or of any particular lands. These remarks are not made with a view of examining the verdict of the jury, but in order to test the materiality of the evidence excluded, and to try the correctness of the charge.

As an historical problem, I should consider the probability to be that Adam was in possession of the premises without title, but with the permission of his father, and that the latter, after his son had died before him, elected to devise the premises to the only son of his deceased son. I am inclined to the opinion that the excluded will was competent upon the question of ownership or seizin between this father and son, considering the obscurity of the other evidence and the great length of time which had elapsed. It was a strong assertion of ownership, and should have been

considered in connection with the other proof. I think that part of the charge of the judge was erroneous in which he instructed the jury that if Lambert, the father of the testator Adam, was originally the owner of the premises in question, the jury might presume a conveyance from Lambert to Adam, if they were satisfied from the evidence that such conveyance had been made. There was no evidence that Adam possessed the premises for any considerable length of time before his death, if he was in possession at all. After his death and the death of his father, which soon followed, possession of his widow and of her second husband was as consistent with the suggestion that the land had always belonged to Lambert, the father, as that he had conveyed it to his son. There was [then really but a short possession, if any, upon which to base the presumption. To presume a deed under such circumstances would be mere conjecture, not warranted by any principle of law.

I am in favor of reversing the judgment and granting a new trial, for the error in excluding the copy of the will and for the error which I have pointed out in the charge.

Reversed.