CHARLES J. BROMLEY, Respondent, *v.* SEBASTIAN MOLLNAR et al., Appellants.

County Court, Erie County, December 8, 1942.

714

*Robert P. Galloway* for appellants.

*Alfred Morrison* for respondent.

WARD, J. The defendants have appealed from a judgment rendered by the Honorable FLOYD H. HURST, a Justice of the Peace of the Town of Evans, New York, in favor of the plaintiff and against the defendants.

This action was brought to recover the cost of constructing a line fence located between farms owned by the parties, under section 305 of the Town Law.

At the trial before a jury, the Town Clerk of the Town of Evans testified that, as custodian of records, he searched his records and found no document involving a fence-line dispute between these parties. A fence viewer, who acted for the parties to this action in 1925, together with another fence viewer, reduced their findings to writing that described the fence and the proportion to be maintained by each and they "were filed with the Clerk of the Town of Evans at that time." A typewritten copy of the findings was identified by one of the acting fence viewers who stated that it was "just as we found." The plaintiff also identified the decision of the fence viewers as being correct. Since 1925, the parties performed their respective duties under the decision, and every year the plaintiff served a notice upon defendant Sebastian Mollnar, who would wait until the last day before he performed. On April 1st and 5th, 1942, the plaintiff effected the service of two sufficient notices upon both defendants to repair according to the provisions of section 305 of the Town Law. After waiting longer than one month, the fence in question was rebuilt and repaired by the plaintiff.

The defendant Sebastian Mollnar testified on direct examination that he never had any decision of fence viewers served upon him, nor did he ever see one, but he did admit that he repaired this fence for "the last 18 years." When cross-examined, the defendant added that he did not "recollect" whether any notice was shown to him; that he repaired 700 feet of the line fence and the plaintiff, 1800 feet; that he complained to the plaintiff when they "had the other case in 1925 and Galloway (defendants' attorney) did last year;" that he knew what fence viewers were for; that he did not rebuild or repair the fence for over one month from May 1, 1942, because he "had Galloway (his attorney) to take care of it."

The defendants' attorney moved to dismiss the plaintiff's oral complaint on the ground that it did not state a cause of action under the provisions of section 303 of the Town Law. On appeal he continued in this contention stating that "nothing is on file in the Town Clerk's Office;" "that no notice was given the defendant of the proceeding of the fence viewers;" that the plaintiff "put in evidence a typewritten copy that they allege is the decision of the fence viewers, but it is unsigned and has the wrong name of the party it seeks to bind."

Thus, sections 303 and 305 of the Town Law should be applied to this case for a proper solution to the dispute between these parties. A careful inspection of these sections and the reported opinions interpreting and construing the same immediately discloses some ambiguity and the scarcity of judicial comment which, in this instance, date back to the 40's and 30's of the last century. The thousands of farm owners throughout this State should have a clear and detailed source of information on their rights and duties concerning division fences; therefore, it seems appropriate that an opinion be written to fulfill these needs.

" Construction," in its legal sense, may be defined as the process of determining the proper meaning and application of statutes and other documents. (Black's Law Dictionary, [3rd ed.].) " Interpretation," strictly speaking, is limited to any exploration of the written text itself, while " construction " includes the use of extrinsic considerations beyond the words of the statute. (See Black's Law Dictionary [3rd ed.], and cases cited.) Accordingly, these sections will be interpreted and construed.

Up to 1890, the present section 303 of the Town Law did not define the steps to be taken in settling a fence dispute between the owners of adjoining farm lands. (See L. 1850, ch. 319.) In 1890, the substance of section 303 was enacted, although later it was renumbered from time to time. (See L. 1890, ch. 569, § 103; L. 1909, ch. 63, § 363; L. 1932, ch. 634, § 303.)

The defendants argue that section 303 of the Town Law was not complied with by the plaintiff in 1925 and so his action in 1942 is ill-founded. This section (at that time numbered 363; see L. 1909, ch. 63, § 363) provides: " If disputes arise between the owners of adjoining lands, concerning the liability of either party to make or maintain any division fence, or the proportion or particular part of the fence to be made or maintained by either of them, such disputes shall be settled by any two of the fence viewers of the town, one of whom shall be chosen by each party; and if either neglect, after eight days' notice, to make such choice, the other party may select both. The fence viewers, in all matters heard by them, shall see that all interested parties have had reasonable notice thereof, and shall examine the premises and hear the allegations of the parties. If they can not agree, they shall select another fence viewer to act with them, and the decision of any two shall be

reduced to writing, and contain a description of the fence, and the proportion to be maintained by each, and shall be forthwith filed in the office of the town clerk, and shall be final upon the parties to such dispute, and all parties holding under them.''

The first point raised by the defendants is, since '' nothing is on file in the Town Clerk's Office,'' in 1942, it follows that the decision of the fence viewers was not '' forthwith filed in the office of the town clerk,'' back in 1925.

Section 366 of the Civil Practice Act provides: '' Certificate of search for paper as evidence. Where the officer to whom the legal custody of a paper belongs certifies under his hand and official seal that he has made diligent examination in his office for the paper, and that it cannot be found, the certificate is presumptive evidence of the facts so certified, as if the officer personally testified to the same.''

The law presumes that a public officer will perform his official duty by keeping public records safe in his office, and if such papers are not found there the presumption arises that no such document has ever been in existence, and, until rebutted, this presumption of nonexistence continues. (*Deshong* v. *City of New York,* 176 N. Y. 475; *Title Guaranty & Trust Co.* v. *City of New York,* 205 N. Y. 496.) Another general presumption is that no official, or person acting under oath of office, will do anything contrary to his official duty, or omit anything which his official duty requires to be done (*Matter of Marcellus,* 165 N. Y. 70), unless rebutted by affirmative evidence of irregularity, but the burden of producing such evidence rests upon him who asserts unlawful or irregular conduct. (*Culp* v. *City of New York,* 146 App. Div. 326.) Also, the presumption of continuance does not operate backward; that is, a state of facts which is proved to exist is not presumed to have existed at any previous time. (*Hanna* v. *Stedman,* 230 N. Y. 326.) Of course, where there are conflicting presumptions of unequal weight, the stronger will prevail. (*Palmer* v. *Palmer,* 162 N. Y. 130.)

In this case, the presumptions of nonexistence and non-filing of the decision of the fence viewers were rebutted by the testimony of one of these fence viewers who stated that their decision was forthwith filed with the town clerk. This, coupled with the other presumptions, though some be conflicting, was sufficient for the jury to find that the decision was duly filed.

Under section 303 of the Town Law, there is only one set of facts when the decision of the fence viewers must be filed at all, and that is: *First,* when the two fence viewers '' cannot

agree;" *second,* when they "select another fence viewer to act with them;" *third,* when "the decision of any two shall be reduced to writing," and *fourth,* when such decision contains "a description of the fence, and the proportion to be maintained by each."

Here, it follows that since the two fence viewers agreed upon their decision, it was not necessary to file it in order to bind the parties in dispute. The fact that they did file it was not necessary under this statute, although it should be commended as good practice, for it perpetuates the record.

The defendants further complain that no notice was given to them of the "proceeding of the fence viewers."

At the time of the original dispute in 1925, and at the present time, the statutes placed a duty upon each owner of two adjoining tracts of land, except when they otherwise agreed, to make and maintain a just and equitable portion of the division fence between such lands. (See Town Law, § 300; L. 1932, ch. 634, § 300; L. 1911, ch. 86, § 1; L. 1909, ch. 63, § 360.) Under new section 303 of the Town Law, when a dispute arises between the owners of adjoining lands, concerning the making or maintaining of a division fence, the settlement of such a dispute imposes positive duties upon such owners. The first duty is that "such disputes *shall* be settled by any two fence viewers of the town," and second, "one of whom *shall* be chosen by each party." An alternative is offered by the statute, *viz.,* "if either neglect, after eight days' notice, to make such choice, the other party *may* select both." (Italics supplied.) This last is not a duty, for the party who has selected one fence viewer *may* abandon this procedure if the other party neglects to act, or he may select both viewers after giving his opponent eight days' notice.

In this case, the defendants make no complaint as to the appointment of the fence viewers; they only complain of not receiving notice of the "proceedings of the fence viewers." The duty to give all interested parties "reasonable notice" of "all matters heard by them" is imposed upon the fence viewers, not upon any of the parties. The defendants do not deny that the fence viewers examined the premises and heard the allegations of the parties as required by the statute.

Upon cross-examination, the defendant Sebastian Mollnar was asked about the occasion when the fence viewers were "called in about 15 years ago" and whether he had ever seen "this notice." This was objected to and the objection was overruled. Then the witness was shown the notice and was

asked if it were ever shown to him; he answered: "I don't recollect." This is the only evidence, or attempt at evidence, offered by the defendants upon the point of notice. In the face of that inadequate attempt at rebuttal, the court will presume that the fence viewers did their duty by giving the defendants "reasonable notice" of all "matters heard by them."

The last objection of the defendants may be disposed of summarily. They contend that the plaintiff improperly introduced in evidence a typewritten copy of the fence viewers' decision; that it was unsigned and incorrectly names the "party it seeks to bind."

In this case the decision of the fence viewers was not required to be in writing since only two fence viewers acted in 1925 without disagreement. Under section 303 of the Town Law there is no direction that such a written decision be signed by the fence viewers, even where a writing is to be made of the decision. The decision, dated December 15, 1925, was made by two fence viewers of the town of Evans concerning a dispute over a division fence between Charles Bromley and "Edd Mullner." The defendants' farm is described, the former owner named, the fence measured and staked, neighboring farm owners are named, the said "Edd Mullner" is directed to repair a certain 773 feet and Charles Bromley to repair a specified 1864 feet of division fence, and the decision concludes with the words: "Signed this 18th day of December, 1925 Edward J. Brown, Adelbert Clark." Such a decision would have been sufficient under section 303, because the mere misspelling of the name of a party, who as a reasonably prudent person could have ascertained that it referred to him, cannot permit that party to hide behind such a minor error where he, himself, admits under oath that he had performed under that decision for over eighteen years.

Where the original writing has been lost, secondary evidence of its contents is admissible in evidence. (*Enders* v. *Sternbergh*, 33 How. Pr. 464; *Ford* v. *Walsworth*, 19 Wend. 334.) The sufficiency of the proof of loss is a question of fact for the trial court and will not be reviewed on appeal by the higher courts. (*Mason* v. *Libbey*, 90 N. Y. 683.)

Here, a sufficient foundation was laid for the introduction in evidence of the typewritten copy of the fence viewers' decision.

The plaintiff brings this action under section 305 of the Town Law (L. 1932, ch. 634; taken from L. 1909, ch. 63, § 365; L. 1890, ch. 569, § 105; R. S. pt. 1, ch. 11, tit. 4, §§ 36, 37) which is vague, general and indefinite, and which provides as follows:

"Neglect to make or repair division fence. If any person who is liable to contribute to the erection or repair of a division fence shall neglect or refuse to make and maintain his proportion of such fence, or shall permit the same to be out of repair, he shall be liable to pay the party injured all such damages as shall accrue thereby, to be ascertained and appraised by any two fence viewers of the town, and to be recovered with costs. The appraisement shall be reduced to writing, and signed by the fence viewers making it. If such neglect or refusal shall be continued for the period of one month after request in writing to make or repair the fence, the party injured may make or repair the same, at the expense of the party so neglecting or refusing, to be recovered from him with costs." It provides for two distinct remedies that are available to an injured "party" when "any person who is liable to contribute to the erection or repair of a division fence shall neglect or refuse to make and maintain his proportion of such fence, or shall permit the same to be out of repair." The first remedy is to obtain all "damages" of the injured party "ascertained and appraised by any two fence viewers of the town, and to be recovered with costs;" the second remedy is to request the guilty party "in writing to make or repair the fence," when after one month of such neglect or refusal, "the party injured may make or repair the same, at the expense of the party so neglecting or refusing, to be recovered from him with costs."

In this case, the plaintiff selected the second remedy under section 305 of the Town Law. He effected service upon both defendants in April, 1942, of a formal and sufficient request in writing to "erect and repair" the division fence in question; he waited longer than one month for the defendants to act; then he erected and repaired the said fence and, after a trial before a court and jury, he recovered the expense thereof from the defendants with costs. The plaintiff carefully and properly followed every step of the statutory remedy to enforce his right. Therefore, the judgment for the plaintiff should be affirmed. (See *Bronk* v. *Becker,* 17 Wend. 320; *Clark* v. *Brown,* 18 Wend. 213; *Stafford* v. *Ingersol,* 3 Hill 38.)

Although not necessary to the decision of this appeal, many questions arise as to the first remedy set forth in section 305 of the Town Law. What is meant by "damages?" How are the two fence viewers chosen? How are these damages recovered and collected? May or must the courts be used to enforce the appraisement of the fence viewers? Does the word "costs" mean court costs, statutory costs, cost incurred by the fence

viewers under section 304, Town Law (L 1932, ch. 634), disbursements, or all of them? After the appraisement is written and signed, what must be done with it? Must it be served upon the parties, filed with the town clerk, or retained by the fence viewers?

Sections 303 and 305 of the Town Law are committed to the care and consideration of the Legislature of this State for appropriate revision, if in its legislative wisdom revision is desirable.

Judgment affirmed, without costs. Prepare and submit judgment accordingly.