NICHOLS *v.* MUTUAL LIFE INS. CO. OF NEW YORK.

*(Knoxville,* September Term, 1941.)

Opinion filed November 29, 1941.

J. L. GRAYSON, of Mountain City, and GUINN & MITCHELL, of Johnson City, for plaintiff in error.

CATES, SMITH & LONG, of Knoxville, and DONNELLY & GOODMAN, of Mountain City, for defendant in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The plaintiff, Mrs. Frances Nichols, as beneficiary, instituted this suit upon a policy of insurance issued by defendant upon the life of her husband, Bynum E. Nichols, in the sum of $5,000, and providing for double indemnity "upon receipt of due proof that the Insured died as a direct result of bodily injury effected solely through external, violent, and accidental means, independently and exclusively of all other causes," etc. The policy further provided "that the Double Indemnity shall not be payable if death resulted from self-destruction, whether sane or insane," etc.

The jury found in favor of defendant. Their verdict was approved by the trial court, and, upon appeal, his judgment was affirmed by the Court of Appeals.

Certiorari was granted by this court, due to the novel question involved, and the case has been argued by counsel.

The facts as found by the Court of Appeals are not challenged; hence we incorporate them herein as follows:

"The deceased was forty-eight years of age at the time of his death, and had been in bad health for several years. At the time of his death he had been drawing disability benefits under the policy of insurance involved in this suit for a period of eight years on proof that he was totally disabled. He left his home on Saturday, September 22, 1939, after doing the morning chores, to go to Mountain City a short distance away. It was a cool morning and the insured returned to the house to get

his sweater after he had started. Before leaving he had asked members of the family if they had sufficient flour and meal to last until Monday. He was not seen alive after leaving home on the morning of September 22d. His body was found on the following morning approximately a quarter of a mile from the main highway passing his home and leading to Mountain City. The body was found lying on its back in a depression caused by the uprooting of a tree, with the left hand under the body and the right raised with the palm toward the head. The left wrist was cut in two places, and the throat was slashed in three different places. The windpipe and the external jugular vein was severed. The body was fully clothed with the exception of the hat which was lying a short distance from the body, though the clothing was slightly disarranged. There were no other marks of violence on the body other than the cuts on the left arm and the throat.

"The leaves on the ground were spattered with blood and they were somewhat disturbed, some of the witnesses describing them as if 'they had been wallowed in.' The bark on a dogwood tree a few feet away from the body had been skinned off for a space of eight or more inches and there was blood on the tree at the point where it was skinned. One of the witnesses testified that he saw some blood from thirty to forty yards below where the body was found and that there was a little blood on bushes and leaves from that point to where the body was found. A knife, similar to one given to the deceased by a relative a short time before his death, was found within a few feet of the body. There is a little uncertainty as to whether this knife was open or closed, but the coroner is positive that the knife was open at the time it was found;

that it had been stepped on and was flush with the top of the ground. It was covered with blood or something that caused leaves and other substances to stick to it. The witness Duffield said the knife found near the body of deceased looked like the knife he had seen in the possession of the deceased. From all of which we think the proof indicates that the knife found near the body was the property of the deceased, and every circumstance indicates that it was the instrument used to inflict the wounds causing his death.

"Deceased had no enemies so far as the record discloses and there was no attempt to establish a motive for anyone to do him violence. No inquest was held by the coroner and no investigation for foul play was made by the Sheriff or any other agency of the law so far as the record discloses. The Sheriff testified that no request had even been made for an investigation into the cause of the death of the insured, and he knew of nothing to indicate the possibility of foul play. Plaintiff proved no fact or circumstance to support the theory of murder, and it is not even argued in brief that the insured was murdered. The case of plaintiff rests upon the showing that the insured died a violent death and the presumption arising from this showing.

"On the other hand the defendant proved certain facts and circumstances from which an inference of suicide might be drawn. As hereinbefore stated the insured had been totally disabled for a period of eight years. Dr. Glenn examined him in July, 1937, and found him to be a very sick man. He treated the insured only a short time prior to his death and found him in a depressed and disturbed condition. Dr. Butler had been treating the insured for tuberculosis and chronic nephritis since 1930.

Chronic nephritis is a disease of the kidneys from which recoveries are rare. And it is easy to understand the depressed condition of the insured after suffering so long from the combined ravages of these two ailments.

''Clay Duffield, a neighbor of deceased, described him as a very nervous man, and that he often discussed the condition of his health with witness. Only a few months prior to his death, deceased told the witness that he was afraid his mind might get bad and he would harm some member of his family. According to this witness the deceased feared that he was near the breaking point. J. C. Cross describes a conversation he had with deceased in August of 1937 while deceased was in a hospital in Bristol. The witness was passing through the hall in the hospital and heard someone call him, but he did not answer the call as he was going to a room occupied by his wife at the time. Later a nurse informed him that deceased wanted to see him. The witness later went to the room where deceased was at the time, and was told by him that he wanted the witness to take him home. The witness informed him that he would take him home, but that he would have to get a release from the hospital to which deceased replied that he would not do that; that he would just put on his clothes and climb out the window; that they thought he was crazy but that he was not.''

The trial court instructed the jury, in part, as follows:

''It is the contention of the plaintiff in this case that this man, the insured, was murdered. It is the contention of the defendant in this case that this man, the insured, met his death at his own hands. There is no question but that he reached his death by one or the other of these methods, and no one contends that he did not.

"You have heard the matter of presumption discussed here. I instruct you, gentlemen of the jury, that there is a presumption that this man didn't kill himself, and there is also a presumption that somebody else didn't commit murder on his person, and these two presumptions cancel each other, so you needn't waste your time or your thoughts upon the question of presumptions in this case."

Counsel for plaintiff insist that the court committed prejudicial error in saying to the jury that "these two presumptions cancel each other." This was error.

In 20 Am. Jur., Evidence, section 163, it is said: "The same state of facts may give rise to two conflicting presumptions. In such a situation, one of the presumptions must give way. The rule prevails that their strength should be measured and that the weaker should be deemed to be overcome by the stronger."

The same rule is announced in 22 C. J. S., Criminal Law, section 599, p. 917.

In *Persons* v. *State,* 90 Tenn., 291, 295, 16 S. W., 726, 727, it is said:

"In civil cases, when one has been found dead, even with marks of violence, nothing else appearing, the presumption is that deceased did not commit suicide, as also that he or she was not murdered. [*Accident*] *Insurance Co.* v. *Bennett* [90 Tenn., 256], 16 S. W., 723 [25 Am. St. Rep., 685].

"It is contended the rules of evidence are the same in civil and criminal cases. Such is the general rule, but it does not follow, because the rule is the same, that presumptions applicable in the one are always applicable in the other, for an antagonistic presumption may exist, and does, in criminal cases; that is, the innocence of the defendant. That presumption of innocence does not al-

low the presumption of any fact against it. So the presumption that a deceased did not commit suicide cannot be applied in criminal cases against the presumption of innocence."

■ It follows that in a criminal case the presumption of innocence is stronger than that against suicide.

■ In civil cases the general rule is stated in 22 C. J., 95, as follows: "The presumption is always against suicide or self-destruction on the part of a sane person who came to his death under circumstances not explained."

■■ It would seem, therefore, that in a civil case the presumption against suicide is greater than that against murder, and the trial court committed error in charging the jury that these two presumptions cancel each other. This, however, was harmless error, for the reason that the trial court should have directed a verdict in favor of defendant because plaintiff had failed to show that the death of deceased resulted from accidental means. The theory of plaintiff that deceased was murdered is not supported by any direct evidence, and the surrounding facts and circumstances detailed herein are insufficient upon which to base such a conclusion.

■■ In *Provident Life & Acc. Ins. Co.* v. *Prieto*, 169 Tenn., 124, 140, 141, 83 S. W. (2d), 251, 257, it is said: "In an action on a policy of accident insurance, or on a double indemnity clause of a policy of life insurance, containing an independent clause excluding suicide, the affirmative of the issue rests on the plaintiff from the beginning to the end of the trial, and it is the duty of the plaintiff to carry the burden of proof in its primary sense, and to establish, by a preponderance of all the evidence, that death resulted from a cause liability for

which was assumed by the policy. If the facts and circumstances attending death leave it reasonably doubtful as to whether it was caused by accidental means or by suicide, the presumption against suicide comes to the aid of the plaintiff, and casts on the defendant the duty of going forward with the proof and establishing the defense of suicide by a fair preponderance of the evidence.''

As previously stated, we find no evidence to establish an accidental death, and the judgment of the Court of Appeals will be affirmed.