448 P.2d 653

**Jean C. PETERSEN and Clarice Petersen, husband and wife, Plain-tiffs-Appellants,**

**v.**

**John P. PARRY, Administrator of the Estate of Brent T. Johnson, Deceased, and John B. Rogers, Administrator of the Estate of Owen G. Johnson, Deceased, Defendants-Respondents.**

**No. 10161.**

Supreme Court of Idaho.

Dec. 16, 1968.

Petersen, Moss & Olsen, Idaho Falls, for plaintiffs-appellants.

Albaugh, Bloem, Smith & Pike and Holden, Holden & Kidwell, Idaho Falls, for defendants-respondents.

SPEAR, Justice.

Appellants (plaintiffs) instituted this action for damages for the alleged wrongful death of their adopted minor child, Curtis T. Petersen, a 13-year-old son.

The first cause of action alleged the negligence of two automobile drivers, i. e., Brent T. Johnson (hereinafter designated as $R_1$) and Owen G. Johnson (hereinafter

designated as $R_2$), driver of the automobile in which the deceased minor child was riding at the time the two automobiles collided. The Johnsons were not related.

The collision occurred about six o'clock a. m., during daylight, the morning of August 2, 1965, on a dry, straight, level, two-lane highway about $2\frac{1}{2}$ miles north of Downey, Idaho, on U.S. Highway No. 191 between Salt Lake City, Utah and Pocatello, Idaho. At the point of impact the pavement was over 38 feet wide, and thus amply sufficient to permit the simultaneous passage of two automobiles traveling in opposite directions. The vehicle driven by $R_2$ was proceeding in a northerly direction at the time of the collision; and this vehicle, according to the testimony of the investigating officer, was substantially in the *southbound* lane, or the wrong lane, of traffic at the moment of impact. This is established by the physical facts, i. e., the skid marks and the gouge marks on the pavement and the damage to the respective vehicles. The evidence of the investigating officer, both orally and from Plaintiffs' Exhibit 8, a photograph taken at the scene of the accident, and Plaintiffs' Exhibit 2, a diagram prepared by the investigating officer, establishes the left front of the vehicle driven by $R_1$ at the time of the impact was a distance of only two feet 10 inches over the center line extending into the northbound lane, following 26 feet of skid marks which originated while the $R_1$ vehicle was entirely within its own or the southbound lane. The testimony of the investigating officer together with Plaintiffs' Exhibits 3, 4, 12, 13 and 14, all being photographs taken by the investigating officer at the scene of the accident and at the damaged car lot to which the vehicles were later towed, discloses conclusively that this was a right front to right front collision. Both vehicles were approximately 6 feet in width and, therefore, the $R_2$ vehicle must necessarily have been almost entirely across the center line and into the southbound, or wrong lane, of traffic at the moment of impact.

Additionally, the evidence discloses that $R_2$ made no attempt to avoid the accident because his vehicle left no visible skid marks prior to the collision.

Furthermore, the evidence establishes that both vehicles were traveling at the estimated speed of about 60 miles per hour, which was the posted speed limit for this particular highway at that time. $R_1$ did attempt to avoid the accident by braking his vehicle leaving 26 feet of skid marks which may have pulled his vehicle slightly to the left just prior to the collision. These skid marks, as previously indicated, began when the $R_1$ vehicle was entirely within its own lane of traffic and in less than $\frac{1}{4}$ of a second prior to the collision as computed by the investigating officer on the basis of the estimated speeds of both vehicles.

$R_2$ was related by marriage to appellants, being married to the daughter of appellant-husband's sister. He had summer employment with the construction company which appellant-husband supervised, and lived with appellants in their home in Idaho Falls during the summers. He frequently traveled to Logan, Utah on week-ends to visit his wife and child. On the week-end immediately prior to the accident, which occurred on a Monday, $R_2$ transported the deceased minor to visit his grandparents in Lewiston, Utah which is located about 18 to 20 miles north of Logan. Since they resided about 2 miles off the main highway this meant a slight deviation from $R_2$'s normal route of travel. Because $R_2$ was taking the Petersen boy with him, appellant-husband filled the vehicle with gas which cost about $6.00, this being charged to his gas station account. However, it was not contended by appellants that their son could not have gone with $R_2$ to visit his grandparents if the tank of gas had not been furnished.

■ These are all the facts presented to the trial court by the appellants during the trial of this cause, and indeed are necessarily all the facts that can ever be presented to any court, because the five

occupants of the two cars involved were all killed in the accident and there are no other known eye witnesses thereto. In light of these meager facts, it is my opinion the trial judge was entirely correct when he granted respondents' motions for involuntary dismissal of appellants' first cause of action at the completion of their case in chief.

It should be noted that appellants' second cause of action was directed against the decedent Brent T. Johnson ($R_1$) and his personal representative, John P. Parry, and was based partially on the doctrine of res ipsa loquitur. The trial court granted a motion to dismiss this second cause of action. The cause then proceeded to trial on the first cause of action.

At the close of appellants' case in chief both respondents moved for an involuntary dismissal. The trial court granted the motion on the ground that appellants' evidence and the facts as proven thereby, when considered most favorably to appellants, were equally consistent with the absence as with the existence of negligence or gross negligence on the part of the drivers of the two automobiles. The court also ruled as a matter of law that the decedent minor, Curtis T. Petersen, at the time of the collision, was a guest in Owen John-

son's ($R_2$) automobile within the meaning of the motor vehicle guest statute, I.C. § 49-1401.

Appellants have appealed both from the order granting judgment of involuntary dismissal of their second cause of action, I.R.C.P. 12(b) (6), and from the order of involuntary dismissal of their first cause of action, I.R.C.P. 41(b). However, they assign error committed only insofar as the trial court granted respondents' motion for an involuntary dismissal of their first cause of action. We therefore assume that appellants have abandoned their appeal from the judgment of dismissal under I.R.C.P. 12(b) (6), of their second cause of action.

Appellants' alleged basis of recovery is grounded upon I.C. §§ 5–310 [1] and 5–327 [2].

I.C. § 5–327 provides recovery for injury or death "caused by the wrongful act or negligence of another," but only "upon some competent, satisfactory evidence corroborating the testimony of said injured person regarding negligence and proximate cause."

In ruling on a motion for involuntary dismissal under I.R.C.P. 41(b) [3] the following standard has been adopted:

"A motion for a nonsuit [4] presents a question of law, as to whether the evi-

---

1. 5–310. Action for injury to child.—The parents may maintain an action for the injury or death of a minor child, and a guardian for the injury or death of his ward, when such injury or death is caused by the wrongful act or neglect of another * * *.

2. 5–327. Personal injuries — Death of wrongdoer—Survival of action—Limitations on recovery.—Causes of action arising out of injury to the person, or death, caused by the wrongful act or negligence of another, shall not abate upon the death of the wrongdoer, and each injured person or the personal representative of each one meeting death, as above stated, shall have a cause of action against the personal representative of the wrongdoer; provided, however, that the injured person shall not recover judgment except upon some competent, satisfactory evidence corroborating the testimony of said injured person regarding negligence and proximate cause; * * *.

3. Rule 41(b). Involuntary dismissal—Effect thereof.—For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for lack of an indispensable party, operates as an adjudication upon the merits.

4. A nonsuit under former I.C. § 10–705 is "substantially in accord" with its successor, I.R.C.P. 41(b). See compiler's note, I.R.C.P. 41(b).

dence, viewed in the light most favorable to the plaintiff, with all the reasonable inferences properly deducible therefrom, presents a prima facie case entitling the plaintiff to have the issues submitted to the jury. [Citations] If the evidence establishes a prima facie case and the motion is nevertheless granted, the decision is against the law." Julien v. Barker, 75 Idaho 413, 272 P.2d 718 (1954); Carson v. Bye, 79 Idaho 495, 321 P.2d 604 (1958); Whitt v. Jarnagin, 91 Idaho 181, 418 P.2d 278 (1966).

"Where there is substantial competent evidence tending to establish plaintiff's case, or where reasonable minds may differ as to the conclusion to be reached therefrom, the cause should be submitted to the jury." Bancroft v. Smith, 80 Idaho 63, 323 P.2d 879 (1958); Cf. Sturgis v. Garrett, 85 Idaho 364, 379 P.2d 658 (1963).

■ It is axiomatic, that the plaintiffs in a tort action founded upon the alleged negligence of a defendant must prove by a preponderance of the evidence (1) that the conduct of the defendant was negligent and (2) that such negligence was the proximate cause of the injuries or death for which the cause of action has been instituted. In my opinion if the facts as established in the case at bar had been submitted to a jury and the jury had returned a verdict in favor of the appellants as against either respondent, the trial judge would have had no alternative except to grant a judgement non obstante veredicto (n.o.v.) upon proper motion therefor.

■ On the morning of the accident, and just prior thereto, $R_1$ was driving his vehicle in his own—the southbound—lane of traffic. He was faced with a situation of peril by the approaching $R_2$ vehicle traveling substantially if not entirely in his, $R_1$'s lane of traffic. He braked down, as shown by the skid marks of the $R_1$ vehicle, and pulled, or by the braking was pulled, slightly to the left in an attempt to avoid the impending collision. This occurred less than $\frac{1}{4}$ of a second before the actual impact of the two vehicles. There is serious doubt in my mind whether this slight infraction of the provisions of I.C. § 49–708 constitutes the type of "driving" intended in the prohibition of the statutory language,

"Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, * * *."

But even if this be conceded, this court has recognized that the circumstances involved may well furnish an excuse or justification for the negligence presumed to arise on the proof of violation of such a statute. This principle is set out in Bale v. Perryman, 85 Idaho 435, on page 443, 380 P.2d 501, on page 505, as follows:

"It must be recognized that certain circumstances furnish an excuse or justification for the negligence presumed to arise on proof of violation of a statute or ordinance. Such circumstances may generally be classified in four categories: (1) Anything that would make compliance with the statute impossible; (2) Anything over which the driver has no control which places his car in a position violative of the statute; (3) An emergency not of the driver's own making by reason of which he fails to obey the statute; (4) An excuse specifically provided by statute. [Citation]"

See also 47 A.L.R.2d 6, § 17; Martin v. Nelson et al., 82 Cal.App.2d 733, 187 P.2d 78 (1947). This same principle has been recognized and followed in the Idaho cases of Colwell v. Bothwell, 60 Idaho 107, 89 P.2d 193 (1939); Stuart v. McVey, 59 Idaho 740, 87 P.2d 446 (1939); and Hamilton v. Carpenter, 49 Idaho 629, 290 P. 724 (1930).

The facts in the cause at bar establish this case within the provisions of the third category mentioned in Bale v. Perryman, supra, for assuredly this was an emergency, not of $R_1$'s own making and by reason of which he braked down and "drove" his vehicle slightly over the center line, obviously in an effort to avoid the impending collision.

I also wish to point out that if this cause were submitted to a jury on the only facts possibly available, there are several questions which I submit are impossible of being resolved by the jury. For instance, why was the $R_2$ vehicle substantially, or wholly, within the southbound or wrong lane of traffic at the time of the accident? How long prior to the impact had the $R_2$ vehicle been traveling at least partially in the southbound or wrong lane? Why were there no skid marks left by the $R_2$ vehicle? Had $R_2$ gone to sleep? Had $R_2$ suffered a blackout or heart attack? Was $R_2$'s attention merely momentarily diverted? Should $R_1$ have perceived the violation of $R_2$ in time to avoid the collision? Did $R_1$ "drive" his vehicle over the center line or was the vehicle pulled over by the braking action? There is no evidence from which a jury could resolve these questions.

■■ Additionally, $R_1$ is entitled to the presumption of due care, founded on the principle that a person will maintain the ordinary instincts for self-preservation, where, as in the cause at hand, the party accused of negligence is deceased and unavailable as a witness. Prior Idaho case law has established the rule that unless there are other facts .rebutting the presumption it is sufficient to make out a prima facie case against negligence by the deceased. Haman v. Prudential Ins. Co. of America, 91 Idaho 19, 415 P.2d 305 (1966); Adams v. Bunker Hill, etc. Mining Co., 12 Idaho 637, 89 P. 624, 11 L.R.A., N.S., 844 (1906); Larsen v. Jerome Cooperative Creamery, 76 Idaho 439, 283 P. 2d 1096 (1955). The record is devoid of any evidence contrary to the presumption in favor of $R_1$, so it stands as unrebutted prima facie evidence of nonnegligence entitling $R_1$ to a judgment. Larsen v. Jerome Cooperative Creamery, supra; Madron v. McCoy, 63 Idaho 703, 126 P.2d 566 (1942).

It is my opinion that, under the circumstances, the appellants have failed to prove, by a preponderance of the evidence, negligence on the part of $R_1$ sufficient to justify a verdict for the death of their son based upon such alleged negligence.

Now what does the evidence disclose concerning the proximate cause of the accident in which appellants' son lost his life? The only testimony in this regard is that of the expert, the investigating officer, who testified as follows:

"Q Do you have any knowledge concerning what did cause this accident?

"A I do not.

"Q You are unable to state an opinion as to why either driver turned in the direction he did?

"A *There simply is not enough physical evidence to show why the accident happened.*" (emphasis supplied)

I submit that when an Idaho state police officer, trained in the art of investigating accidents and determining the cause thereof, could not form an opinion as to the cause of this accident on the basis of *all* and the *only* evidence available, twelve untrained ladies and gentlemen of a jury could not fix or determine the proximate cause of this accident without resorting to pure speculation and conjecture. This court has previously held that a verdict cannot rest on conjecture. Dent v. Hardware Mut. Cas. Co., 86 Idaho 427, 388 P.2d 89 (1964); Splinter v. City of Nampa, 74 Idaho 1, 256 P.2d 215 (1953); Antler v. Cox, 27 Idaho 517, 149 P. 731 (1915). The basic principle is aptly stated in the *Dent* case, 86 Idaho at page 434, 388 P.2d at page 93 as follows:

" 'The underlying principle applicable here is that a verdict cannot rest on conjecture; that where a party seeks to establish a liability by circumstantial evidence, he must establish circumstances of such nature and so related to each other that his theory of liability is the more reasonable conclusion to be drawn therefrom; and that where the proven facts are equally consistent with the absence, as with the existence, of negligence on the part of defendant, the plain-

tiff has not carried the burden of proof and cannot recover. (Citations).

" 'Where it remains equally probable from a consideration of all of the evidence, that the injury resulted from the cause suggested by the defendant, as from that suggested by the plaintiff, the plaintiff has not established his case.' "

this being merely a quotation from a previous Idaho decision, Splinter v. City of Nampa, supra. This principle is equally applicable to the case at bar.

It is contended that the submission of the question of proximate cause to the jury is authorized by the Idaho case of Hackworth v. Davis, 87 Idaho 98, 390 P.2d 422 (1962), based on the California case of Summers v. Tice, 33 Cal.2d 80, 199 P.2d 1, 5 A.L.R.2d 91 (1948). These cases however are distinguishable from the cause at bar, for the basic theory proclaimed therein is that where the negligence of two or more persons combined in causing a single, indivisible injury to a third person, then all the tort feasors are jointly and severally liable for the injury produced. As previously pointed out in this opinion, the evidence at hand is insufficient to support a finding of negligence on the part of $R_1$ herein. Therefore *Hackworth* and *Tice* are inapplicable.

In my opinion, the appellants have failed to adduce evidence sufficient to prove by a preponderance of the evidence, that negligence on the part of $R_1$ was the proximate cause of the accident and the death of their son.

■ The question of the liability of the estate of $R_2$ for damages suffered by appellants through the loss of their son is considerably more complex. There is no question but what $R_2$'s vehicle was being driven substantially upon the *left* (instead of the right) half of the roadway at the time of the collision, and therefore $R_2$ was

in violation of I.C. § 49–708; for the evidence does not disclose that such driving by $R_2$ came within any of the exceptions provided in this statute. Such violation constitutes negligence per se by $R_2$. Bale v. Perryman, 85 Idaho 435, 380 P.2d 501 (1963). The evidence discloses no circumstances which would furnish an excuse or justification for the negligence presumed to arise upon proof of the violation of a positive statute, such as I.C. § 49–708, enacted for the protection of motorists. Thus $R_2$ must be deemed to have been negligent per se. Bale v. Perryman, supra; State ex rel. McKinney v. Richardson, 76 Idaho 9, 277 P.2d 272 (1954); Ineas v. Union Pacific RR. Co., 72 Idaho 390, 241 P.2d 1178 (1952); Howard v. Missman, 81 Idaho 82, 337 P.2d 592; Chard v. Bowen, 91 Idaho 521, 427 P.2d 568 (1967).

■ However, as I interpret the above cited case law, the "negligence per se" merely means *"ordinary negligence* per se." I have found no Idaho authority holding that the naked violation of a positive statute such as I.C. § 49–708 constitutes *gross negligence* per se, and to recover from the estate of $R_2$ appellants have the burden of proving (1) $R_2$ was guilty of gross negligence, and (2) that such gross negligence was the proximate cause of the death of their son. This additional burden of proof is foisted upon appellants by the provisions of I.C. § 49–1401 [5], for the trial court was correct in ruling that, as a matter of law, the deceased minor was a guest of $R_2$ on the trip to and return from Utah.

The close relationship of the parties refutes the contention that $R_2$ either expected or received payment for the transportation of the deceased child on the trip in question. Appellants contend that since they furnished $R_2$ with some gasoline for the trip to Utah, this is sufficient to take the deceased child out of the category of a

5. 49–1401. Liability of motor owner to guest.—No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause for damages against such owner or operator for in-

juries, death or loss, in case of accident, unless such accident shall have been intentional on the part of the said owner or operator or caused by his intoxication or gross negligence.

"guest" under the statute. The evidence discloses, however, that the boy could have made the trip without such gas having been furnished by appellants. Even more controlling, however, is the established rule in Idaho that the mere furnishing of gasoline for the trip whereby the son was transported to Utah and back is insufficient, as a matter of law, to constitute payment sufficient to place the deceased minor in the category of a passenger rather than that of a guest under the statute. This rule is clearly enunciated in Hamilton v. Miller, 91 Idaho 27, 415 P.2d 313 (1966), wherein the court quoted from Riggs v. Roberts, 74 Idaho 473, 264 P.2d 698 (1953) as follows:

> " 'The courts have quite uniformly held that merely paying for gas and oil or sharing the payment for gas and oil is not of itself and alone sufficient to establish passenger status. * * *
>
> " ' * * * to constitute one a passenger, not a guest, while the consideration need not be payment of money, there must be contributed by the passenger to the driver of the car something substantial and of worth to the driver, i. e., commercial, not mere courtesy. * * * In other words, the driver must be actuated by a benefit of substantial value, not mere courtesy or kindess of recognition of the amenities or friendship * * * to make the rider a passenger. * * *
>
> " 'Furthermore, the authorities indicate there must be a mutual understanding, reasonably clear to both the rider and the driver before the trip is undertaken, that the rider's relationship to the driver is that of a passenger and not a mere guest.' 74 Idaho at 478, 264 P.2d at 701."

Thus, the deceased child was a "guest" within the purview of the statute, and since there is no contention by appellants that the accident was intentional on the part of R₂ or caused by intoxication of R₂ liability must be predicated upon gross negligence of R₂.

The first question to be resolved, therefore, is whether the evidence adduced is sufficient to establish a jury question as to whether R₂ was guilty of conduct constituting *gross negligence*. This has proven vexatious to many of the courts who have wrestled with "guest statutes" using this term to delineate the type of exaggerated misconduct on the part of a host before allowing liability for injuries to a guest. For a most scholarly discussion of this problem see Williamson v. McKenna, 223 Or. 366, 354 P.2d 56 (1960). Justice O'Connell aptly expresses the problem in this language:

> "Basically, our problem is to formulate a useable test by which we, as well as the trial judges and juries, will be able to determine with reasonable accuracy and consistency whether the host's conduct in a particular case is sufficiently culpable within the meaning of the guest statute to permit recovery. Since we are dealing here with a question of the quantum of fault it is obvious that we cannot expect to find a rule or standard that can be applied with any precision; the most that we can hope for is a clear statement of the factors or elements which must characterize the host's conduct in order to permit recovery."

It must be noted that the specific language of the Oregon statute being interpreted in *Williamson* is "gross negligence or * * * reckless disregard of the rights of others." This or similar language is used in the statutes of many of the other states, the supreme court decisions concerning which are ably and exhaustively discussed in the *Williamson* case. When the Idaho guest statute was first adopted in 1931 the same language was employed (1931 Session Laws, chapter 135, section 1, page 232), but in 1939 this statute was amended substituting the word "intoxication" for the words "gross negligence" (1939 Session Laws, chapter 160, section 1, page 285). Then in 1963 the statute was amended to its present form (I.C. § 49–1401) by substituting the words "gross negligence" for the phrase "reckless disregard of the rights of others"

(1963 Session Laws, chapter 114, section 1, page 337). Thus we do not have the problem of the disjunctive "or" between "gross negligence" and "reckless disregard of the rights of others." In discussing the cases where the courts have been faced with delineating a distinction between the two phrases, Justice O'Connell makes the following point:

"It appears from many of these cases that even where the court purports to distinguish gross negligence from reckless, willful or wanton conduct, in the application of the definitions to the particular facts presented for decision, defendant's conduct is not regarded as grossly negligent unless it involves the type of fault generally treated as reckless or willful misconduct. This was clearly evident in the Massachusetts cases mentioned above. In commenting on a Massachusetts case indulging in this practice, the writer in 35 Mich.L.Rev. 812 (1937) makes the following statement:

" 'We should keep in mind that when the court approaches one of these cases it is looking for evidence, manifested in acts, of the state of mind of the defendant. We may conceive of a gradation of tortious acts, which result in personal injury from those clearly negligent on one end to those clearly intentional on the other. The fundamental difference between them is the state of mind of the defendant when he set in motion the factors which caused the injury. Somewhere along this scale we draw a line and say that on one side all the acts are negligent, on the other they are intentional. Now the court has drawn another line dividing the negligent acts into those of ordinary negligence, and those of gross negligence, and the acts which fall on one side or the other of that line do so *because of the relative amount of deliberateness with which the defendant acted.*' (emphasis supplied)" *Williamson,* 354 P.2d at page 64.

In an attempt to reconcile the two expressions in the statute Justice O'Connell concluded as follows:

"* * * It seems obvious that the language of the amended statute was intended to describe a type of conduct involving serious fault. Accidents caused by intentional conduct, reckless conduct, or as a result of intoxication were included. With these highly culpable types of conduct was included 'gross negligence.' Certainly this was not to include a type of conduct a 'little more' culpable than ordinary negligence; 'gross' means 'flagrant,' 'out of all measure' etc. (Webster's Dictionary). What, then, is a type of conduct which, although serious to *the point of grossness, is nevertheless* not reckless? One could answer by saying that all of the statutory expressions used were ejusdem generis and the legislative purpose was not to differentiate but to supply a descriptive list of types of conduct deemed serious enough to warrant recovery by the guest. So construed, it would be immaterial that the expressions 'gross negligence' and 'reckless disregard of the rights of others' had a common meaning. If it is assumed that gross negligence was intended to describe a type of conduct different from reckless conduct, there is still a basis upon which the two expressions could be reconciled. 'Reckless disregard of the rights of others' could be regarded as the type of conduct engaged in by the driver when he actually perceives the danger and continues his course of conduct. Gross negligence could then be considered as describing conduct of the driver when he does an act not knowing of the high degree of manifest danger but under circumstances where he should have known.

"Either of these interpretations of the statute is reasonable. Since we adopt the broad definition of reckless conduct set out in 2 Restatement, Torts, § 500, it makes no difference which of the interpretations is adopted; the result is the same in either case. The statute must be construed to give it a reasonable meaning capable of judicial application if possible. We think that it is possible and

reasonable to construe the statute as we have indicated above. We conclude, therefore, that 'gross negligence' as used in ORS 30.110 means reckless conduct. We accept the definition of reckless conduct stated in 2 Restatement, Torts, § 500." [6]

Thus, Oregon has adopted the Restatement definition (N. 6) as the proper definition of the terms "reckless disregard of the rights of others" and "gross negligence" as used in the Oregon host-guest statute.

Justice O'Connell then considered more specifically the character of reckless conduct as so defined, and pointed out and discussed the following items: (1) The defendant must intentionally do the act or intentionally fail to do the act which involves the risk; (2) The defendent's conduct must involve a high degree of probability that harm will result; (3) It is not necessary that defendant actually know of the risk; (4) Defendant's actual consciousness of the risk, although not necessary to prove reckless conduct, may be a significant factor in establishing his liability; (5) Inadvertent conduct, without more, will not constitute recklessness; and (6) A series or combination of negligent acts may constitute reckless conduct if taken together they indicate the so-called reckless state of mind.

The Oregon court then applied this test to the facts involved in that case and determined that the trial court should have granted defendant's motion for a directed verdict because the facts adduced did not constitute the recklessness requisite to establish either gross negligence or disregard of the rights of others.

I am fully aware of the recent decision of this court in Hodge v. Borden, 91 Idaho 125, 417 P.2d 75 (1966), in which the Williamson v. McKenna case, supra, was dis-cussed and in which the distinction drawn between "reckless disregard" and "gross negligence" in the Oregon case of Turner v. McCready, 190 Or. 28, 222 P.2d 1010 (1950), deemed endorsed in the *Williamson* case, was adopted as applicable under I.C. § 49-1401. Only a portion of the *Williamson* decision hereinbefore quoted was quoted in the *Hodge* case, and this portion is not illustrative of the true holding in *Williamson*. As stated previously, the Oregon court in fact concluded that the definition of reckless conduct contained in 2 Restatement, Torts, § 500, was the proper definition for establishing either "gross negligence" or "reckless disregard of the rights of others."

In the *Hodge* case this court held that when a statute is amended, it is presumed that the legislature intended it to have a meaning different from that accorded it before the amendment. The question presented is: what difference was intended when the term "gross negligence" was substituted for the phrase "reckless disregard of the rights of others"? In my opinion the intendment was to soften the harshness of the definition given to "reckless disregard of the rights of others" in Foberg v. Harrison, 71 Idaho 11, 225 P.2d 69 (1950), which definition was substantially applied in determining all host-guest cases decided by this court thereafter. That definition was as follows:

" * * * The term 'reckless disregard' as used in said section means an act or conduct destitute of heed or concern for consequences; especially foolishly heedless of danger, headlong rash; wanton disregard, or conscious indifference to consequences." 71 Idaho at 16, 225 P.2d at 71.

Also it is conceded that the term "gross negligence" must require some greater degree of culpability than the term "ordinary

---

6. "The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."

negligence." To aid the practicing attorneys and the trial judges concerning the interpretation of the term "gross negligence" as it is now used in the Idaho guest statute, it is the duty of this court, so far as possible, to lay down a clear and concise definition of that term. From the fact that the legislature listed as the other grounds upon which the liability of the owner or operator of a motor vehicle could be predicated as (1) "intentional on the part of the said owner or operator" or (2) "caused by his intoxication" it is abundantly clear that in using the term "gross negligence" as the third ground the legislature intended a requirement of recklessness on the part of the owner or operator. In my opinion the test to be applied is contained in the following modified version of the definition of reckless conduct contained in 2 Restatement, Torts, § 500, as follows:

> "To constitute gross negligence within the meaning of the Idaho guest statute [I.C. § 49–1401] the owner or operator must perform an act or intentionally fail to perform an act which it is his duty to perform, knowing or having reason to know of facts which would lead a reasonable, prudent man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."

This requires a greater degree of culpability than "ordinary negligence" the test for which has consistently been given by Idaho trial courts as a "stock" instruction as: "What would an ordinarily careful or prudent, person have done, or not have done, in the same or similar circumstances"; and yet it requires less culpability than the unduly harsh definition of "reckless disregard of the rights of others" of the *Foberg* case which has been cited and quoted hereinbefore.

It is interesting to note that in Owen v. Taylor, 62 Idaho 408, 114 P.2d 258 (1940), this court approved an instruction defining the term "gross negligence" as it appeared in the Idaho guest statute prior to the 1939 amendment, as follows:

> "The court instructs you that by gross negligence is meant great negligence. The term 'gross' means great or extreme. Gross negligence must include an element of *carelessness* so great that the Jury can say that there was not only an absence of due care that should have been exercised but also a degree of negligence substantially greater than that which would constitute ordinary negligence." (emphasis supplied)

It appears that is entirely in keeping with the definition suggested in this opinion.

In applying this definition to the facts of any particular case the court should consider the specifics enumerated and discussed in the *Williamson* case, i. e.: (1) The defendant must intentionally do the act or intentionally fail to do the act which involved the risk; (2) The defendant's conduct must involve a high degree of probability that harm will result; (3) It is not necessary that defendant actually knows of the risk; (4) Defendant's actual consciousness of the risk, although not necessary to prove reckless conduct, may be a significant factor in establishing his liability; (5) Inadvertent conduct, without more, will not constitute recklessness or gross negligence; and (6) A series or combination of negligent acts may constitute reckless conduct if taken together they indicate the so-called reckless state of mind.

Applying this test to the facts at hand, have the appellants established, by a preponderance of the evidence, any misconduct on the part of R₂ which is sufficiently culpable to constitute gross negligence? In my opinion they have not. The only fact relied upon by appellants is that the vehicle of R₂ was proceeding up the highway substantially in the wrong lane of traffic under circumstances where an alert and prudent driver would have seen the approaching vehicle in the same lane of traffic and would have taken some steps to have avoided the collision. The evidence adduced by the appellants themselves estab-

lishes that $R_2$ was a young man between the ages of 21 and 24 (depending upon the testimony of which of the appellants is accepted), in good health, with no known physical or mental disability; and an alert, intelligent, conscientious young man who was classified by both appellants as a good driver. There is no evidence establishing that $R_2$ had been driving at an excessive rate of speed, that he was under the influence of intoxicants to any degree, that he had driven erratically or had been warned about so driving by the guest, or that the guest made any complaint concerning the manner in which $R_2$ was driving prior to the accident, or that $R_2$ had been conscious of having been sleepy prior to the accident and nevertheless continued driving, or any such additional factor as is relied upon by some of the cases in other jurisdictions holding that there were sufficient facts adduced to submit the question of gross negligence to the jury. It must be conceded there is respectable authority holding that under similar circumstances as found in the cause at hand the issue of gross negligence was held properly submitted to the jury. Burke v. Spear, 277 F.2d 1 (2d Cir. 1960). However the Supreme Court of Iowa in Vandell v. Roewe, 232 Iowa 896, 6 N.W.2d 295 (1942) reaffirmed prior decisions in that state which had pronounced that "mere evidence that a collision occurred on the left-hand side of the road, *without more*, would not support a finding of recklessness under the guest statute." (emphasis added) The latter is the better rule, for without proof of some misconduct on the part of $R_2$ which caused his vehicle to be in the wrong lane of traffic the test of gross negligence has not been met. It is just as plausible to conclude, from the evidence adduced in this case, that $R_2$'s conduct was mere momentary inadvertence, such as dozing off for 2 or 3 seconds without any prior warning of sleepiness, as to conclude that he was guilty of more culpable misconduct or recklessness which would be sufficient under the test set out herein. This brings the case within the purview of Dent v. Hardware Mut. Cas. Co., supra.

There simply is insufficient evidence from which a jury could determine why the $R_2$ vehicle was in the position it was, and the same unresolvable questions previously posed herein in discussing the question of negligence of $R_1$ are equally applicable to $R_2$. To find him guilty of gross negligence would require the jury to resort to speculation and conjecture. As previously pointed out in this opinion, this is not tolerated under the prior Idaho case law.

Furthermore, $R_2$ is entitled to the presumption of due care previously alluded to in discussing the question of $R_1$'s negligence. Haman v. Prudential Insurance Co. of America, supra; Adams v. Bunker Hill, etc., Mining Co., supra; Larsen v. Jerome Cooperative Creamery, supra. This coupled with the meager evidence relied upon by appellants to establish the gross negligence of $R_2$ presented the question, to be decided by the trial judge, of whether or not there was sufficient evidence establishing the requisite quantum of proof of gross negligence to pose a jury question.

Of course appellants contend, just as appellants in all personal injury or wrongful death actions involving the guest statute will always contend, that the question of whether or not the evidence presented, taking into consideration the presumption of due care, is sufficient to constitute gross negligence is a jury question no matter how meager the evidence adduced might be. The contention is that to do otherwise the trial court is merely substituting his judgment for that of the jury, and that if such involuntary dismissal were appealed to this court it would in turn merely be substituting its judgment for that of the jury. This contention is resolved by Justice O'Connell in the *Williamson* case when he points out as follows:

"In nearly every guest case we are warned by plaintiff's counsel that we are not entitled to substitute our judgment for that of the jury. We understand our duty in that respect. But in the guest cases, as in all other cases, it is also our duty to exercise surveillance

over the jury to prevent the rendition of verdicts not based upon sufficient evidence. We must, in some sense, substitute our judgment for that of the jury since we must decide in each case whether the plaintiff has produced sufficient evidence of defendant's culpability to meet the minimum requirements of proof. We do nothing differently in the guest cases than we do in other cases, including those in which the question is whether there is sufficient evidence of negligence to get to the jury. In attempting to arrive at the meaning of the language of the guest statute and to describe what we regard as the type of conduct which must be proved to warrant recovery, we purport only to state the elements which characterize actionable conduct. When we decide that reasonable men could regard defendant's conduct as falling within that definition we hold that the case may go to the jury, in spite of the fact that were we called upon to make a decision as jurors we might conclude from the evidence that defendant was not liable. If this is a sophistical distinction, we can only say that it is no more so in the guest cases than it is in other cases in which we and trial judges pass upon the sufficiency of evidence." 354 P.2d at page 68.

With this reasoning we concur and it is adopted as part of this opinion.

Having concluded that the evidence adduced was insufficient to present a jury question regarding R₂'s gross negligence, it is unnecessary to discuss the contention that the evidence was also insufficient to present a question for the jury concerning whether or not such gross negligence was a proximate cause of the accident and alleged wrongful death.

 The appellants have my every sympathy, as they did that of the trial judge, for the loss of their only son in an accident as unreasonable and as unexplainable as the one here involved, but sympathy is no substitute for facts to establish the liability of the respondents herein for damages to ap-

pellants. If these issues were submitted to a jury, a verdict in favor of appellants would necessarily be based solely upon sympathy, and upon proper motion such verdict would necessarily be set aside and a judgment n. o. v. entered in favor of respondents by the trial court. Thus to remand this cause for a new trial would constitute a useless gesture resulting in unnecessary expenditure of time, effort and money by the parties and the attorneys involved.

Because of the foregoing conclusions it becomes unnecessary to determine whether the provisions of I.C. § 5–327, which require "some competent, satisfactory evidence corroborating the testimony of said *injured person* regarding negligence and proximate cause," (emphasis added) before allowing an injured person to recover judgment against the personal representative of a deceased wrongdoer, should apply to actions, such as the one at bar, for *wrongful death*.

Judgments affirmed. Costs to respondents.

TAYLOR and McQUADE, JJ., concur.

SMITH, Chief Justice, with whom McFADDEN, Justice, concurs (dissenting):

The accident out of which this action arose occurred during daylight and clear weather, on a straight, dry, level, two-lane paved highway, the paved portion of which was 38 feet wide,—amply sufficient to permit the simultaneous passage of two automobiles, with no sight impediments at or near the scene of the accident.

The Owen G. Johnson automobile proceeding northerly, left no skid marks. The Brent T. Johnson vehicle proceeding southerly left skid marks extending the last 26 feet to the place of impact of the vehicles. At the start of the skid marks Brent T. Johnson's vehicle was wholly to the driver's right of the distinctly marked center line of the highway. The collision appeared to have occurred at the center of the highway with a portion of the front end of each vehicle on the driver's left hand

side of the highway center line. There was no evidence of excessive speed on the part of either driver, although from the extensive damage to the vehicles, it appeared that both were proceeding at or near the posted speed limit of 60 miles an hour. The occupants of both vehicles died either immediately or without regaining consciousness.

At the close of appellants' evidence, each respondent presented a motion for involuntary dismissal. The trial court granted both motions and entered orders of dismissal on grounds that appellants' evidence and the facts proven thereby, when considered most favorably to appellants, were equally consistent with the non-liability, as with the liability, of appellants, i. e., with the absence of ordinary negligence on the part of Brent T. Johnson, and of gross negligence on the part of Owen G. Johnson, as with the existence of such negligence. The court also ruled as a matter·of law that the decedent minor, Curtis T. Petersen, at the time of the collision, was a guest in Owen Johnson's automobile within the meaning of the motor vehicle guest statute, I.C. § 49–1401.

In ruling on a motion for involuntary dismissal under I.R.C.P. 41(b),[1] the following standard has been adopted:

"A motion for a nonsuit[2] presents a question of law, as to whether the evidence, viewed in the light most favorable to the plaintiff, with all the reasonable inferences properly deducible therefrom, presents a prima facie case entitling the plaintiff to have the issues submitted to the jury. [Citations] If the evidence establishes a prima facie case and the motion is nevertheless granted, the decision is against the law." Julien v. Barker, 75 Idaho 413, 272 P.2d 718 (1954). See also Carson v. Bye, 79 Idaho 495, 321 P.2d 604 (1958); Whitt v. Jarnagin, 91 Idaho 181, 418 P.2d 278 (1966).

"Where there is substantial competent evidence tending to establish plaintiff's case, or where reasonable minds may differ as to the conclusion to be reached therefrom, the cause should be submitted to the jury." Bancroft v. Smith, 80 Idaho 63, 323 P.2d 879 (1958). Cf. Sturgis v. Garrett, 85 Idaho 364, 379 P.2d 658 (1963).

The only competent evidence on the issue of negligence is the fact that each vehicle was partially over the center line of the highway at the point of impact. No oral testimony was or could be adduced in explanation thereof, and the physical evidence was insufficient to provide an explanation. Therefore, in the absence of evidence to the contrary, both Brent T. Johnson and Owen G. Johnson, when their vehicles collided, appear to have been in violation of the positive inhibition of I.C. § 49–708;[3] that inhibition mandatorily re-

1. Rule 41(b). Involuntary dismissal—Effect thereof.—For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for lack of an indispensable party, operates as an adjudication upon the merits.

2. A nonsuit under former I.C. Sec. 10–705 is "substantially in accord" with its successor, I.R.C.P. 41(b). See compiler's note, I.R.C.P. 41(b).

3. 49–708. Drive on right side of roadway —Exceptions.—(a) Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:
 1. When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;
 2. When the right half of a roadway is closed to traffic while under construction or repair;
 3. Upon a roadway divided into three (3) marked lanes for traffic under the rules applicable thereon; or

quires that a vehicle be driven upon the driver's right half of the roadway, except in the explicitly stated instances not pertinent here.

> "This court has frequently held that for one to violate a positive statutory inhibition is negligence *per se,* and not merely *prima facie* evidence of negligence." Brixey v. Craig, 49 Idaho 319, 288 P. 152 (1930).

See also State ex rel. McKinney v. Richardson, 76 Idaho 9, 277 P.2d 272 (1954); Ineas v. Union Pac. R. Co., 72 Idaho 390, 241 P.2d 1178 (1952); Bale v. Perryman, 85 Idaho 435, 380 P.2d 501 (1963); Lundy v. Hazen, 90 Idaho 323, 411 P.2d 768 (1966); Werth v. Tromberg, 90 Idaho 204, 409 P.2d 421 (1965); Chard v. Bowen, 91 Idaho 521, 427 P.2d 568 (1967); 65 C.J.S. Negligence § 19(3), p. 623 (1966). There is only one exception to the general rule, as stated in Howard v. Missman, 81 Idaho 82, 87, 337 P.2d 592, 594, in harmony with State ex rel. McKinney v. Richardson, supra, as follows:

> " 'To prove that a violation of a statute was excusable and justifiable so as to overcome the presumption of negligence, the evidence must support a finding that the violation resulted from causes or things beyond the control of the person charged with the violation.' "

See also Chard v. Bowen, supra.

Here, the "excusable and justifiable" exception will not apply without some positive evidence to that effect. As to the Owen G. Johnson vehicle there is no such evidence. Nor is there any such evidence as to the Brent T. Johnson automobile; the investigating officer stated that in his opinion the 26 feet of kid marks left by that vehicle did not furnish a sufficient basis for determination of the circumstance (i. e., the causative factors) of the acci-

dent. Absent any further evidence in the premises both drivers were guilty of negligence per se.

Respondents, and the majority opinion, rely upon the cases of Splinter v. City of Nampa, 74 Idaho 1, 256 P.2d 215 (1953) and Dent v. Hardware Mutual Casualty Co., 86 Idaho 427, 388 P.2d 89 (1963), for the proposition that a verdict cannot rest upon conjecture. In the former case, butane gas had exploded in a restaurant, and the question before the court was the location of a gas leak. If the leak had been in the basement, the inference would have been justified that it was caused by faulty positioning of the butane tank. This would have made the city liable, since its engineer had approved the position of the tank. On the other hand, if the leak occurred in the kitchen, no such liability would attain. This Court upheld the district court's judgment non obstante veredicto for defendant on the following premise:

> "The underlying principle applicable here is that a verdict cannot rest on conjecture; that where a party seeks to establish a liability by circumstantial evidence, he must establish circumstances of such nature and so related to each other that his theory of liability is the more reasonable conclusion to be drawn therefrom; and that where the proven facts are equally consistent with the absence, as with the existence, of negligence on the part of defendant, the plaintiff has not carried the burden of proof and cannot recover. [Citations]" 74 Idaho 11, 256 P.2d 221.

In Dent v. Hardware Mutual Casualty Co., supra, the deceased Williams, while driving, collided with a bridge abutment, and died shortly thereafter. Subsequent examination revealed that he died of a cerebral hemorrhage. The question for

---

4. Upon a roadway designated and signposted for one-way traffic.

(b) Upon all roadways any vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions· then existing shall be driven in the right-hand lane then available for traffic, or as close as practicable to the right-hand curb or edge of the roadway, except when overtaking and passing another vehicle proceeding in the same direction or when preparing for a left turn at an intersection or into a private road or driveway.

determination was whether a preexisting condition of arteriosclerosis had provoked the hemorrhage, or whether a head injury received in the accident had caused the hemorrhage. In short, did the hemorrhage cause the accident (for which there would be no recovery under an accident insurance policy) or did the accident cause the hemorrhage? The evidence equally supported each alternative. This Court, citing Splinter v. City of Nampa, supra, reversed a finding for plaintiff and directed the trial court to dismiss the action.

Respondents argue that there is a presumption of due care on the part of the decedents, based in the urge of self preservation, which must be weighed in determining the question of negligence. In its majority opinion, this Court applies the presumption to each decedent automobile driver.

Where there is no direct evidence as to how or why a death may have occurred the presumption of due care arises and procedurally creates "a *prima facie* case of due care upon the part of the person killed." Haman v. Prudential Insurance Co. of America, 91 Idaho 19, 415 P.2d 305 (1966); Adams v. Bunker Hill Mining Co., 12 Idaho 637, 89 P. 624 (1906).

"Where there is a conflict between the presumption [of due care] and contrary evidence, from which reasonable minds might draw different conclusions, it is proper 'to instruct the jury 'as' to the presumption." Geist v. Moore, 58 Idaho 149, 70 P.2d 403 (1937); see also Haman v. Prudential Insurance Co. of America, supra; Department of Finance of State v. Union Pacific Railway Co., 61 Idaho 484, 104 P.2d 1110 (1940).

We then have before us evidence from which the presumption arises that both decedent drivers were negligent per se; also evidence creating the prima facie presumption of due care on the part of both drivers.

The rule that a verdict cannot rest upon conjecture, is not applicable in the case at bar because appellants are afforded the benefit of the presumption of negligence per se, which, in the absence of evidence in excuse or justification of the ostensible violation of a statute, removes the case from one based upon conjectural evidence.

The general rule is that where "conflicting presumptions" are present, the jury should consider them. Scott v. Burke, 39 Cal.2d 388, 247 P.2d 313 (1952); Erandjian v. Interstate Bakery Corp., 153 Cal.App.2d 590, 315 P.2d 19 (1957); People By and Through Dept. of Public Works v. J. P. Loubet Co., 147 Cal.App.2d 566, 305 P.2d 651 (1957); Town of Lexington v. Ryder, 296 Mass. 566, 6 N.E.2d 828 (1937). If the same presumption arises as to both parties to an action, the presumptions simply cancel each other. McVay v. Byars, 171 Or. 449, 138 P.2d 210 (1943); and where presumptions of different legal weight are present, the stronger should prevail. Kearney v. Thomas, 225 N.C. 156, 33 S.E.2d 871 (1945); Bromley v. Mollnar, 179 Misc. 713, 39 N.Y.S.2d 424 (1942); Nichols v. Mutual Life Insurance Co. of New York, 178 Tenn. 209, 156 S.W.2d 436 (1942).

Wigmore explains these rules on "presumptions of law" in terms of the burden of production of evidence:

"[T]he peculiar effect of a presumption 'of law' (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion *in the absence of evidence to the contrary* from the opponent. If the opponent *does* offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule." 9 Wigmore on Evidence, §. 2491(a), p. 288 (3d ed., 1940)

But difficult as these problems of "conflicting (Wigmore prefers "successive") presumptions" may be, they are not present here, since we are dealing with an instance of negligence per se. This is more than simple negligence, and is to be decided by the court. 9 Wigmore on Evidence § 2549(c) at p. 499 (3d ed., 1940).

The distinction between negligence and negligence' per se is "the means and method of ascertainment," in that the former may be found by the jury from the evidence, while the latter results from the violation of a specific requirement of law or ordinance, the only fact for determination by the jury being the commission or omission of specific acts inhibited or required. Swoboda v. Brown, 129 Ohio St. 512, 196 N.E. 274 (1935). Accord: Pittman v. Sather, 68 Idaho 29, 188 P.2d 600 (1947); Kendrick v. Atchison, Topeka & Santa Fe Railway Co., 182 Kan. 249, 320 P.2d 1061 (1958); Nelson v. Zurich Insurance Co., 165 So.2d 489 (La.App., 1964). See also 28 Words and Phrases 693–694 (Perm.Ed.), 65 C.J.S. Negligence § 1(14), p. 461. Wigmore summarizes as follows:

"Where for the kind of case in hand a definite *rule of law,* more precise and concrete [than normal negligence, to be found by the jury], has been framed for determining the effect of the person's conduct, this rule may, in the hands of the judge, conclude the question, and it may cease to be a question of fact for the jury to the extent that the rule of law applies. Thus, a defendant's conduct in carrying a loaded gun on his shoulder in city street may be ruled by the Court to be 'negligence "per se,"' or, in a common phrase, he may be held to have acted 'at peril' of answering for the harmful consequences; so that the question of fact for the jury is merely whether he carried the gun in that way, and the question whether he acted with due care ceases to be a question for them, because it is replaced by a specific and concrete rule of law." 9 Wigmore on Evidence § 2552(a), p. 517 (3d ed., 1940)

As regards proximate cause, where a specific statute is violated so as to constitute negligence per se, an explicit statement of the applicable rule is contained in Bale v. Perryman, 85 Idaho 435, 442, 380 P.2d 501, 505,

"Clearly the statute here involved (I.C. § 49–713) [I.C. § 49–108 in the case at bar] is a safety statute enacted for the protection of all persons using our roads and highways. * * * There is no other reasonable interpretation of the evidence than to conclude that the voluntary act of respondent, which was a violation of law, resulted in his damage and proximately caused or contributed thereto."

In the Bale case the defendant had attempted to pass plaintiff at an intersection, and in so doing, violated a statute. Plaintiff had turned left into defendant. The court held that plaintiff's act was both negligent and the contributing proximate cause of the damages. Cf. Hamilton v. Carpenter, 49 Idaho 629, 290 P. 724 (1930). The same principle should apply in the instant case. The unexplained violation by both vehicle drivers of a statute—a safety measure—constituted negligence per se, and such was the proximate cause of ensuing injuries which Curtis T. Petersen sustained.

For the reasons hereinbefore stated the trial court erred in dismissing appellants' first cause of action as to respondent administrator of the estate of Brent T. Johnson, deceased, rather than permitting the issue of Brent T. Johnson's alleged simple or ordinary negligence to be determined by a jury.

The trial court also erred in dismissing said cause of action as to respondent administrator of the estate of Owen G. Johnson, deceased, rather than permitting the issue of Owen G. Johnson's alleged gross negligence to be determined by a jury. The majority opinion holds that as a matter of law Owen G. Johnson could not be found grossly negligent on the basis of the existent facts in this case. I do not agree. It is settled law that when reasonable minds might differ as to whether certain conduct constitutes negligence or gross negligence, the issue is one for a jury's determination. 60 C.J.S. Motor Vehicles § 258(c), p. 633, § 399(4), p. 998. Herein the facts present such an issue. The physical evidence and the testimony of the investigating officer

establish that at the time of the collision, both cars were across the center line of the highway,—each driver on his driver's wrong or left side thereof. I again point out that the highway was sufficiently wide to allow the simultaneous passage of two cars, and was relatively straight and level; visibility was good; at the place of the accident the view of the highway was unobstructed for several hundred yards in each direction. On the basis of those facts Owen G. Johnson's conduct in driving on his wrong side of the highway in the face of oncoming traffic which he should have seen, constituted gross negligence, or at least the jury could so find.

Several cases from other jurisdictions have held that on the basis of little, if any, more evidence than is present in the case at bar, the question of gross negligence should be submitted to the jury. Most directly in point is Smith v. Turner, 178 Va. 172, 16 S.E.2d 370, 372, 136 A.L.R. 1251 (1941), in which the court held that "A fortiori, needlessly driving on the wrong side of a straight road, in broad daylight, in the face of a car rapidly approaching from the opposite direction and in plain view, is * * * gross negligence." In that case the appellate court held that the lower court erred in taking the question of gross negligence from the jury, saying:

" * * * if the violation of the right-hand rule of traffic by Mrs. Smith, under the circumstances of this case, was not gross negligence as a matter of law, it was at least a question for the jury as to whether such violation constituted gross negligence; * * *." 16 S.E. 2d 370, 373.

In Burke v. Spear, 277 F.2d 1 (2nd Cir., 1960), the court held, in a case similar to the one at bar, that it was not error to submit the issue of gross negligence to the jury. The defendant in that case had moved for a directed verdict, contending that the facts were insufficient to estab-

lish a prima facie case for the jury. The court, however, affirmed a denial of the motion, holding that the district court was correct in submitting the issue to the jury and in refusing to set aside the jury's finding of gross negligence. See also Hall v. Wilkerson, 84 S.W.2d 1063 (Mo.App., 1935); Malone v. Clemow, 111 Cal.App. 13, 295 P. 70 (1931); Hartley v. Berg, 145 Or. 44, 25 P.2d 932 (1933); Smith v. Smith, 199 Va. 55, 97 S.E.2d 907 (1957).

The Court in its majority opinion, as contended by respondents, takes the view that the issue of gross negligence need not be submitted to the jury because a finding of gross negligence on the facts would nevertheless have to be set aside on appeal. I cannot agree. Several cases, in addition to those hereinbefore cited, have upheld a jury's finding of gross negligence on the basis of no more evidence than was adduced in the case at bar. Several such cases are collected in Annot. 6 A.L.R.3rd 832 at 875–886. See also O'Nellion v. Haynes, 122 Cal.App. 329, 9 P.2d 853 (1932); Castro v. Singh, 131 Cal. App. 106, 21 P.2d 169 (1933); Collins v. Robinson, 160 Va. 520, 169 S.E. 609 (1933).

The fact stands undisputed that Owen G. Johnson, at the point of the collision, was driving on his wrong side of a wide, straight, level highway in broad daylight in the face of oncoming traffic. One could neither say that such conduct is insufficient as a matter of law to constitute gross negligence, nor as a matter of law that such conduct constitutes gross negligence. The cases cited amply demonstrate that the present case falls within that area in which reasonable minds might differ as to whether Owen G. Johnson was grossly negligent, thus presenting a factual issue for determination by a jury.

The judgment of involuntary dismissal of appellants' first cause of action should be reversed and the cause remanded for a new trial.